[No. A041918. First Dist., Div. Four. July 17, 1989.]

MARY LEYDON, Plaintiff and Respondent, v.
ROBERT ALEXANDER, Defendant and Appellant.

2

---

COUNSEL

Louis A. Highman and Bruce J. Highman for Defendant and Appellant.

Matthew C. O'Donnell and O'Donnell, Prieston & Cahill for Plaintiff and Respondent.

## OPINION

**CHANNELL, J.**—The trial court issued an injunction precluding appellant Robert Alexander and respondent Mary Leydon from harassing one another. In his appeal, Alexander raises numerous claims of error, including that the trial court erred by finding harassment had occurred as the result of a single incident. We are required to reverse the judgment.

### I. FACTS

From 1974-1979, appellant Robert Alexander worked for the City of Menlo Park. He was terminated from his employment in August 1979. A federal court ruled that he had been improperly terminated, but a final determination of damages had not been made by November 30, 1987.[1] On that date, Alexander went to Menlo Park's city offices. He noticed that respondent Mary Leydon, his former supervisor, was there. Alexander held her responsible for his termination.

Alexander had not spoken with Leydon in eight years, but he did so that day. As he explained it: "[After] years of frustration, anger, and disappointment, I wanted to state to her some of the pain that I had experienced." He asked Leydon if she was still " 'fucking' " the city manager. When she did not respond, Alexander told her she was nothing but a " 'pussy'." When Leydon's coworker Pat Carson, who was Black, suggested that the conversation be moved to an office from the lobby where it was taking place, Alexander told her to "be a good Negro and go back to her office." He denies calling her a " 'nigger' " or referring to Leydon as a " 'cunt'." Leydon's coworker Kristie Mikita asked if she should call the police, a suggestion which Alexander encouraged. He indicated that he would wait for them to arrive. However, Leydon directed her staff not to call the police. The encounter lasted about five minutes, after which Alexander left.

Several days later, Leydon filed a petition for a temporary restraining order and an injunction prohibiting harassment pursuant to Code of Civil Procedure section 527.6.[2] She filed a declaration, and those of Mikita and Carson, about the November 30 incident in support of her petition. A temporary restraining order was issued prohibiting Alexander from harassing Leydon. After a hearing was conducted on the petition, the trial court

---

[1] The district court awarded Alexander only nominal damages. The Ninth Circuit found that the trial court applied the incorrect standard for calculating damages. (*Alexander* v. *City of Menlo Park* (9th Cir. 1986) 787 F.2d 1371, 1372-1376.) Apparently, the remanded case has not yet been determined.

[2] All statutory references are to the Code of Civil Procedure.

enjoined both Alexander and Leydon from contacting or harassing each other at home and at work.

## II. Course of Conduct

On appeal, Alexander contends that the trial court erred in finding harassment had occurred when the evidence showed but a single incident. (See § 527.6, subds. (b), (d).) Under section 527.6, a person who has suffered harassment may seek a temporary restraining order and injunction prohibiting it. (§ 527.6, subd. (a).) If the judge finds by clear and convincing evidence that unlawful harassment exists, such an injunction must be issued. (§ 527.6, subd. (d).)

Alexander contends that the evidence shows only a single incident—that occurring on November 30—and that this is insufficient to meet the statutory requirement of a course of conduct. He is correct. Under this statute, "harassment" is defined as a knowing and willful course of conduct directed at a specific person which seriously alarms, annoys, or harasses the person and which serves no legitimate purpose. A "course of conduct" is defined as "a *series of acts* over a period of time, however short, evidencing a continuity of purpose." (§ 527.6, subd. (b), italics added; *Schraer* v. *Berkeley Property Owners' Assn.* (1989) 207 Cal.App.3d 719, 730 [255 Cal.Rptr. 453].) In order to determine the Legislature's intent, we first look to the words of the statute, giving them their usual and ordinary meaning. (*Committee of Seven Thousand* v. *Superior Court* (1988) 45 Cal.3d 491, 501 [247 Cal.Rptr. 362, 754 P.2d 708]; see *Schraer* v. *Berkeley Property Owners' Assn., supra,* at p. 730 [reasonable, commonsense interpretation].) Webster defines "series" as "a *number* of things or events of the same class . . . ." (Webster's New Collegiate Dict. (9th ed. 1984) p. 1074, italics added.) The definition, being stated in the plural, implies a "number" greater than one. The Judicial Council's instructions for litigants in harassment actions under section 527.6, promulgated at the Legislature's behest, are also consistent with this interpretation. The instructions state that a person may seek relief under the statute if "the defendant has done a series of acts (*more than one*) which seriously alarms, annoys or harasses the plaintiff . . . ." (Judicial Council of Cal., Instructions for Lawsuits to Prohibit Harassment (Code Civ. Proc., § 527.6) (rev. Jan. 1, 1987), italics added.) Under California law, interpretations of state administrative agencies are entitled to great weight when construing such provisions. Generally, courts will not depart from the agency's construction unless it is clearly erroneous. (*Trailer Train Co.* v. *State Bd. of Equalization* (1986) 180 Cal.App.3d 565, 579 [225 Cal.Rptr. 717].) Under the plain meaning of the statute, the single incident of November 30 cannot support issuance of the injunction.

■ The trial court specifically found that Alexander's course of conduct had continued since 1979. However, the only evidence of any conduct other than the November 30 incident was Alexander's lawsuit against the city. ■ ■ He had a constitutional right to petition the court for redress of grievances. (*City of Long Beach* v. *Bozek* (1982) 31 Cal.3d 527, 532-534 [183 Cal.Rptr. 86, 645 P.2d 137], vacated at 459 U.S. 1095 [74 L.Ed.2d 943, 103 S.Ct. 712], reinstated at 33 Cal.3d 727, 727-728 [190 Cal.Rptr. 918, 661 P.2d 1072]; see U.S. Const., art. I.; Cal. Const., art. I, § 3.) The statute specifically provides that constitutionally protected activity is not included within the meaning of the term "course of conduct." (§ 527.6, subd. (b).) ■ Finally, Leydon did not allege that she was harassed by any conduct other than that occurring on November 30. Therefore, the trial court erred in granting the injunction.

Our resolution of the legal issue presented by this appeal should not be read as approval of Alexander's deplorable conduct. However, we must conclude that Leydon has not established the necessary prerequisites for obtaining injunctive relief under section 527.6.[3]

### III. Attorney Fees

Finally, Alexander petitions this court for attorney fees and costs. First, he asks us to determine that the trial court abused its discretion when it ordered each party to bear its own attorney fees. However, as the trial court's underlying decision on the merits has been reversed, it would be futile for us to review its exercise of discretion on the request for attorney fees and costs.

■ Alexander also asks us to award him attorney fees and costs on appeal, pursuant to statute. "The prevailing party in any action brought under this section *may* be awarded court costs and attorney fees, if any." (§ 527.6, subd. (h), italics added.) Under this provision, the granting or denial of such an award is a matter within our discretion. (See *Gyler* v. *Mission Ins. Co.* (1973) 10 Cal.3d 216, 219 [110 Cal.Rptr. 139, 514 P.2d 1219].) We deny this request.

The judgment is reversed.

Anderson, P. J., and Poché, J., concurred.

A petition for a rehearing was denied August 15, 1989, and the opinion was modified to read as printed above.

---

[3] In light of this conclusion, we need not address most of the remaining issues raised by Alexander or Leydon's request for sanctions.