Filed 1/5/21  Flores v. Linares CA2/3

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| ALMA MARIA FLORES, | B298528 |
| Plaintiff and Appellant, | Los Angeles County |
| v. | Super. Ct. No. 19STRO02002 |
| GUADALUPE LINARES, | |
| Defendant and Respondent. | |

APPEAL from an order of the Superior Court of
Los Angeles County, Alexander C.D. Giza, Judge.  Affirmed.

Donald A. Hilland for Plaintiff and Appellant.

No appearance for Defendant and Respondent.

Alma Maria Flores appeals from the trial court's order denying her request for a civil harassment restraining order against her landlord, Guadalupe Linares.[1] We affirm.

## BACKGROUND[2]

On March 27, 2019, Flores filed a form request for a civil harassment restraining order against Linares under Code of Civil Procedure section 527.6 (section 527.6).[3] She asserted Linares has harassed her, her husband, and her three children daily since March 1, 2019. Flores's application included her declaration, dated March 12, 2019.

At the time, Flores and her family lived in a duplex they had been renting from Linares for the past three years.[4] They usually paid their rent in cash. Flores declared that their roof had been leaking severely for months, but Linares and her son refused to repair it and would not let the family repair it themselves. Flores filed a formal code enforcement complaint with the City of Los Angeles in late February 2019.

---

[1] Linares did not file a respondent's brief, so we "decide the appeal on the record, the opening brief, and any oral argument by the appellant." (Cal. Rules of Court, rule 8.220(a)(2).)

[2] "We summarize the facts in the light most favorable to the judgment." (*Brekke v. Wills* (2005) 125 Cal.App.4th 1400, 1405 (*Brekke*).)

[3] On March 12, 2019, Flores apparently asked the court to enter a temporary restraining order until the scheduled April 17, 2019 hearing. That request was denied because the facts in Flores's application did not sufficiently show harassment, as defined by section 527.6, had occurred.

[4] Linares and her son apparently lived in a separate part of the duplex.

Flores stated that, after she complained to the City, Linares threatened to call ICE—Immigration and Customs Enforcement—if her family did not leave. Flores said that on March 9, 2019, Linares offered to pay her $3,000 if the family would leave by the next day. She also declared Linares's son threatens the family daily and that her children are scared. She stated, "We have nowhere to go if [Linares] makes us leave[,] and she keeps threatening us with ICE and with physical force."

Linares filed a response and supporting declaration dated April 12, 2019, denying she threatened Flores or her family. Linares asserted the leaking roof was due to improperly installed solar panels. She acknowledged Flores had complained, and said she had contacted the solar panel installer to repair the roof. The installer delayed in responding, but eventually began repairs.

Linares also stated she and Flores did not have a lease. She said Flores began insisting on paying by check.[5] Linares declared she was "fearful" that "accepting checks from these tenants would make me liable for harboring undocumented immigrants." After consulting an attorney and learning she could not refuse payment by check, however, Linares asserted she told Flores she would accept her checks. Linares also declared she told Flores she would pay her family to relocate, "so I would not be in this predicament between state and federal law," but they refused.

Linares stated Flores's attorney began sending her and her son "threatening legal documents demanding $1 million." She admitted "[t]hat's when [she] called Immigration and Customs Enforcement (ICE) and sought to report their unlawful presence." She declared she informed Flores and her family that she had

---

[5]     Flores also had asserted Linares would not accept a check for their March rent.

reported them to ICE, but did not threaten them. Linares attached the statement of damages she received. It is dated March 13, 2019, and signed by Flores's attorney, but the case number is blank.

Flores filed a reply declaration. She confirmed Linares finally deposited the March rent check after Flores's attorney mailed it. Flores also declared Linares came to her home on April 13, 2019, to tell Flores she did not have that month's rent check. According to Flores, that Saturday a realtor came to her door, told her she had to move out, served her with a notice to move in 60 days, and told Flores to be at the property at 5:00 p.m. on Monday so the realtor could show her unit. Linares told Flores the complex was being sold and they would have to move, but Flores declared Linares did not tell the other immigrant families in the complex this same information. Flores stated Linares asked the other undocumented immigrant family tenants if they knew where Flores's husband worked. Flores also claimed Linares spit on her on March 7, 2019, the day after Flores retained an attorney.

Both Flores and Linares appeared at the April 17, 2019 hearing, and each was represented by counsel. Only Flores testified. She elaborated on points made in her declarations. She testified that "once" Linares told her if she "wasn't comfortable, to leave." Flores continued, "[S]he told me to look for another place. There [were] threats. And she told me to keep [the] check for the rent, to find another place, but I didn't find anywhere else to go. Ever since I received threats." When asked what kind of threats she received, Flores responded, "She [Linares] threatened to deport me with ICE. She calls my daughters stupid, crazy. . . . And finally[,] she spit on me. She came and spit on me."

Flores produced two video recordings her husband took on March 7, 2019, that she said showed Linares threatening her

4

with ICE and spitting on her. Flores also produced uncertified transcripts of the videos, in the original Spanish and translated into English. The court played one of the videos in open court while reading the transcript. The people were not visible in the video because it was made around 8 p.m. The court stated it did not see "anything that looked like" spitting on the video. Flores indicated the point in the video where she said she could hear Linares spitting.

Flores testified that during the recorded discussion, she and her husband were standing in their doorway, and Linares and her son were standing outside. The transcript begins with Linares stating, "Another thing, my brother, the one that's in Norwalk, you know him, I told him about the problem, and he asked me if you were legal. I said no. Then he said if you all started problems, he would call immigration services." After the parties accuse each other of acting illegally, the transcript ends with, "[Linares] spits on [Flores]."

A second video of the same date captures the apparent continuation of the parties' discussion. According to that transcript,[6] Flores asks Linares if she wants the rent check, "or no?" Linares replies, "No, no, I don't want it. Because you know what I was going to tell you, to not pay this month, I was going to give you this month[,] so you look for another place." Flores responds, "No, I'm not going to look for another place until you give me something written, I'm serious." Linares's son then states, "If we don't do it the good way, we'll do it the bad way."

---

[6] Although the trial court did not view this second video in open court, the transcripts from both videos were filed with Flores's reply, and the court confirmed it had read all of the papers. Flores's attorney also referred to its contents during the hearing.

Flores responds, "Ok. However you want, because that's a threat." Linares's son denied he had made a threat, saying, "[W]e didn't say what was going to be done specifically." Flores then states, "Ok[,] but you said you [referring to Linares] were going to call ICE on me. Do it." Linares replied, "I didn't' say I would, I said my brother."

Flores's attorney asked her if Linares threatened her in other ways. She responded that Linares said if she didn't leave willingly, Linares would report her to the immigration services. Flores testified her family had not been living at home because they learned Linares had reported them to ICE. She said Linares "knocks on the door," and the kids are afraid.

Linares's attorney cross-examined Flores. When questioned, Flores testified her last contact with Linares had been the week before the hearing when Linares came to pick up the check, "and she was angry." Flores said she shut the door, and Linares knocked on it three more times and yelled. She testified Linares did not make any threats of physical harm against her.

Linares's attorney pressed Flores to recall a date of a specific threat Linares made and what she said. Flores again referred to the March 7, 2019 incident and described Linares as threatening to report Flores to immigration services. When asked if Linares made that threat again, Flores responded that Linares would always say the same thing, that Flores had "no papers, and she was going to report [her] to . . . immigration, and they were going to throw [her] out of the country."

On cross-examination, Flores admitted she had filed a civil lawsuit against Linares alleging she violated certain Civil Code sections and seeking $1 million. Her attorney also confirmed they had filed a civil case.

6

After cross-examining Flores, Linares's attorney moved to dismiss the request for a restraining order on the ground there was no clear and convincing evidence of a threat of irreparable harm. He argued there were allegations Linares violated the Civil Code and those would be addressed in Flores's lawsuit, but there was "no credible objective ongoing threat that needs to be enjoined," even if the court accepted the allegations as true.

The court expressed its concern about the Civil Code provisions prohibiting landlords from threatening to disclose or disclosing a tenant's immigration status. Flores's attorney directed the court to Linares's admission that she had called ICE. He argued the call only could have been in retaliation for Flores and her husband complaining about the roof. Linares's attorney confirmed Linares called ICE, but reiterated no threats had been made.

After hearing the evidence and counsel's arguments, the trial court ruled it did not find clear and convincing evidence of harassment. The court noted "there are separate procedures for redress" for the dispute between the parties concerning the rental property and payment of rent, and it understood "from the testimony that those are being looked into." The court then indicated it was "troubled by the testimony" it had heard concerning the violation of the Civil Code sections preventing the use of or threat of disclosing the immigration or citizenship status of a tenant.

Nevertheless the court concluded the evidence, including the video transcripts, did not provide sufficient evidence of a threat to disclose Flores's immigration or citizenship status. In response to Flores's attorney's further argument, the court stated, "I don't find it to be clear and convincing evidence of a threat. It may be a preponderance. And I think there are other avenues for relief of that burden of proof." The court continued,

7

"Although I'm moved by the situation, I did not find there was clear and convincing evidence. And so there's not going to be a civil harassment restraining order in this case. Again, this looks largely as landlord/tenant. It looks largely related to the Civil Code issues. And there's a legal proceeding that is the appropriate procedural path."

## DISCUSSION

### 1. *Applicable law and standard of review*

The Legislature enacted section 527.6 " 'to protect the individual's right to pursue safety, happiness and privacy as guaranteed by the California Constitution.' [Citations.] It does so by providing expedited injunctive relief to victims of harassment." (*Brekke, supra*, 125 Cal.App.4th at p. 1412.) Harassment is defined as (1) "unlawful violence," (2) "a credible threat of violence," or (3) "a knowing and willful course of conduct directed at a specific person that seriously alarms, annoys, or harasses the person, and that serves no legitimate purpose. The course of conduct must be that which would cause a reasonable person to suffer substantial emotional distress, and must actually cause substantial emotional distress to the petitioner." (§ 527.6, subd. (b)(3); *Harris v. Stampolis* (2016) 248 Cal.App.4th 484.) A " '[c]ourse of conduct' is a pattern of conduct composed of a series of acts over a period of time, however short, evidencing a continuity of purpose," not including constitutionally protected activity. (§ 527.6, subd. (b)(1).)

To obtain a restraining order under section 527.6, the petitioner must show by "clear and convincing evidence that unlawful harassment exists." (§ 527.6, subd. (i).) The clear and convincing evidence standard requires a finding of " 'high probability.' " (*Russell v. Douvan* (2003) 112 Cal.App.4th 399, 401 (*Russell*).) Moreover, because "an injunction serves to prevent future injury and is not applicable to wrongs that have

8

been completed," the petitioner also must show a high probability of future harm. (*Id.* at pp. 400, 402; *Scripps Health v. Marin* (1999) 72 Cal.App.4th 324, 332-333 (*Scripps Health*) [interpreting similar statute relating to workplace violence to require court to find petitioner at risk of further unlawful conduct by clear and convincing evidence].)

We review a trial court's denial of a request for a restraining order for abuse of discretion (*Salazar v. Eastin* (1995) 9 Cal.4th 836, 849-850), and the trial court's factual findings—express and implied—for substantial evidence (*R.D. v. P.M.* (2011) 202 Cal.App.4th 181, 188 (*R.D.*)). In so doing, "[w]e resolve all factual conflicts and questions of credibility in favor of the prevailing party and indulge in all legitimate and reasonable inferences to uphold the finding of the trial court if it is supported by substantial evidence which is reasonable, credible and of solid value." (*Schild v. Rubin* (1991) 232 Cal.App.3d 755, 762.) The issue is not whether evidence in the record supports a contrary conclusion, but whether substantial evidence, contradicted or uncontradicted, supports the trial court's determination. (*Bowers v. Bernards* (1984) 150 Cal.App.3d 870, 873-874; *Rupf v. Yan* (2000) 85 Cal.App.4th 411, 429, fn. 5.)

**2.**    ***Flores's contentions of error***

Flores based her restraining order request primarily on Linares's purported threat to call ICE and report Flores and her family's immigration status after Flores complained about the leaking roof and refused to relocate.[7] In her opening brief, Flores contends the trial court confused civil harassment under section 527.6 with harassment under the Civil Code sections

---

[7]    Flores even titled her declaration in support of her petition, "Declaration of Alma Maria Flores re: Threats of Calling ICE re Immigration Status."

9

prohibiting landlords from reporting their tenants' immigration status for improper purposes.[8]  Flores does not explain how this purported "confusion" resulted in error, however, other than to state the court "fail[ed] to recognize" those Civil Code sections.  In fact, during the hearing, the trial court not only referred to these Civil Code sections, it quoted text from Civil Code section 1940.2.

From what we can discern from Flores's brief, she seems to argue that Linares's violation of one of these Civil Code sections is sufficient to require a civil harassment restraining order under section 527.6.[9]  But a landlord's unlawful act under the Civil

---

[8]     For example, Civil Code section 1940.2 provides, in part, that it is unlawful for a landlord to "[t]hreaten to disclose information regarding or relating to the immigration or citizenship status of a tenant" to influence her "to vacate a dwelling."  (Civ. Code, § 1940.2, subd. (a)(5).)  Section 1940.3, subdivision (b)(3) prohibits a landlord from disclosing a tenant's immigration or citizenship status to harass or intimidate the tenant, retaliate against the tenant, or influence the tenant "to vacate a dwelling."  Section 1942.5, on which Flores relies heavily in her brief, prohibits a landlord from reporting or threatening to report a tenant to immigration authorities in retaliation for the tenant's complaint to housing authorities.  (*Id*., § 1942.5, subds. (a), (c).)

[9]     Flores's opening brief on this point is unhelpful to say the least.  It recites the requirements for showing retaliatory eviction under Civil Code Section 1942.5 and argues Linares violated that section.  The brief then discusses retaliatory eviction under that section in a first person, narrative form that Flores's attorney appears to have copied directly from an uncited blog-post— including the original writer's advice and personal experiences.  The brief also mentions the California Constitution's due process clause, but does not state how the issue of due process is relevant here.

Code does not automatically entitle a wronged tenant to expedited injunctive relief under section 527.6. A civil harassment restraining order will issue only upon a showing of clear and convincing evidence of harassment that is reasonably certain to recur. (*R.D., supra*, 202 Cal.App.4th at p. 189 [§ 527.6 injunction "authorized . . . only when it appears from the evidence that the harassment is likely to recur in the future"].)

And, because the issue on review turns on *the appellant's* failure of proof, the question for us " 'becomes whether the evidence compels a finding in favor of the appellant as a matter of law. [Citations.] Specifically, the question becomes whether the appellant's evidence was (1) "uncontradicted and unimpeached" and (2) "of such a character and weight as to leave no room for a judicial determination that it was insufficient to support a finding." ' " (*Sonic Manufacturing Technologies, Inc. v. AAE Systems, Inc.* (2011) 196 Cal.App.4th 456, 466.) We thus examine the evidence to determine whether it compelled the trial court to issue a restraining order against Linares under section 527.6. We conclude it did not.

### 3. *The trial court did not abuse its discretion*

To establish Linares harassed her under section 527.6, Flores testified that Linares threatened her repeatedly.[10] The evidence of repeated threats was not uncontradicted, however. The only threat that Flores could testify to with any specificity was Linares's threat to report Flores and her family to ICE.

---

[10] We presume Flores contends Linares's "threats" fall under the "course of conduct" definition of harassment. At the hearing, Flores never testified Linares engaged in violence or threatened her with violence, other than spitting on her. As we discuss, the court did not err in finding the evidence of the spitting incident insufficient.

11

As to that threat, Flores could recall specifically only the March 7, 2019 date. According to the March 7, 2019 video transcript, Linares repeated her brother's statement that he would call immigration if Flores and her husband "started problems." In both the transcript and her declaration, Linares denied having threatened Flores. Instead, Linares admitted both that she had offered to pay Flores to relocate and that she had reported Flores's "unlawful presence" to ICE and informed Flores that she had done so.

The trial court was "troubled" by the testimony, but did not find clear and convincing evidence of harassment under section 527.6. The court did not find the video or its transcript to provide clear and convincing evidence of a threat to disclose immigration status. The court also found Flores's testimony about the threats by Linares to call ICE were not corroborated by the other evidence, implicitly rejecting Flores's testimony that Linares repeatedly threatened Flores with reporting her to ICE.[11] We did not hear the parties' tone in the video, as the trial court did, and will not reweigh the evidence nor reassess the trial court's credibility determinations. (*Pope v. Babick* (2014) 229 Cal.App.4th 1238, 1246 [reviewing court is not a second trier of fact].) Moreover, the court also noted the testimony that there had been *actual* reporting to ICE in concluding there was no clear and convincing evidence of a *threat*. Given it found insufficient evidence of a threat, we can infer the court also concluded Flores failed to meet her burden of proof to demonstrate she was at risk of future harm—in other words, that Linares's wrongful conduct

---

[11] We also can infer the trial court rejected Flores's characterization of Linares's statement in the transcript offering Flores to skip that month's rent to look for a new place, as a threat.

likely would continue—a requirement to enjoin future conduct. (*Russell, supra*, 112 Cal.App.4th at pp. 401-402.)

We conclude substantial evidence supports the trial court's implied finding that it was not likely Linares would continue to harass Flores by threatening to report her to ICE. By Linares's own admission, the deed already had been done. Thus, a restraining order would serve only to punish Linares's *completed* wrongful act. (*Russell, supra*, 112 Cal.App.4th at p. 402; *Scripps Health, supra*, 72 Cal.App.4th at p. 332.) Accordingly, even presuming, without deciding, that Linares's statements to Flores reflected in the March 7, 2019 video transcripts and her actual reporting of Flores to ICE constitute harassment under section 527.6, the court did not err in refusing to issue a restraining order against Linares.

Flores's attorney argued Flores faced a continuing risk of harm if Linares was not restrained because Flores could not return home. He asserted that they "believe[ed]" Linares had ICE waiting for Flores at her home when Flores was told to be there to show the property. That argument was based on Flores's speculation, however. It did not demonstrate a high probability that Linares, going forward, would call ICE to come to the property. Moreover, no restraining order could prevent ICE from coming to Flores's home. Thus, injunctive relief would not prevent the potential harm Flores feared would result from Linares's earlier report to ICE. And, as Linares's attorney argued, it would not be reasonable to conclude Linares would threaten Flores with new calls to ICE when Flores had a pending lawsuit that sought damages against her.

Besides the threats to call ICE, Flores's attorney also argued Flores was under "constant harassment" by Linares "coming around to her door and things, telling her that she hasn't paid the rent when she has, when she's offered the rent

13

and she won't accept it."  In her brief, Flores asserts that Linares spit on her, Linares and her son "repeatedly threatened her," and Linares harassed her "on a daily basis, knocking on her door while her husband was at work and telling her she had to get out, move, leave the unit."  The court found no evidence of spitting on the video, however.  The video itself is not part of the record. We presume the court's finding is correct.  (*Haywood v. Superior Court* (2000) 77 Cal.App.4th 949, 955 [reviewing court will infer substantial evidence supports the trial court's findings where record on appeal does not contain all of the evidence submitted to the trial court].)

The court also reasonably could conclude Flores's testimony of one instance where Linares continued to knock on Flores's door while shouting was insufficient to constitute clear and convincing evidence of a "credible threat of violence" or "a knowing and willful course of conduct that seriously alarms, annoys, or harasses the person, and that serves no legitimate purpose."[12] (§ 527.6, subd. (b)(3); see *Leydon v. Alexander* (1989) 212 Cal.App.3d 1, 4-5 [single incident, although deplorable, insufficient to obtain injunctive relief under § 527.6].)  Nor does the evidence compel a finding that this behavior would continue. Again, the trial court could infer it was improbable Linares would continue to engage in such tactics in the face of Flores's pending lawsuit.

Linares may very well have called ICE in retaliation for Flores having complained about the roof, but without clear and convincing evidence that Linares would continue to harass Flores

---

[12]   Although Flores argues she was harassed on a daily basis by Linares knocking on her door, she only testified in any detail about the one incident.  She also admitted Linares never threatened her with physical harm.

by making those or other threats, a civil harassment restraining order could not be issued. The trial court, therefore, did not abuse its discretion in denying Flores's request. And, by the time of the April 17, 2019 hearing, there already was a legal proceeding underway—requiring a lesser standard of proof[13]—that would provide, as the trial court put it, "the appropriate procedural path" to address Flores's claims against Linares for violating the Civil Code.

## DISPOSITION

The judgment is affirmed. Because respondent did not participate in the appeal, no costs are awarded to her.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

EGERTON, J.

We concur:

LAVIN, Acting P. J.                    DHANIDINA, J.

---

[13] Unless otherwise provided, the burden of proof in civil cases requires "proof by a preponderance of the evidence." (Evid. Code, § 115; *Estate of Ford* (2004) 32 Cal.4th 160, 173.)

15