Filed 1/12/22  Tiffany W. v. Miranda H. CA1/5
**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| TIFFANY W., <br><br> Plaintiff and Respondent, <br><br> v. <br><br> MIRANDA H., <br><br> Defendant and Appellant. | A160948 <br><br> (Alameda County <br> Super. Ct. No. HG20065401) |

Miranda H. appeals from a civil harassment restraining order entered against her on July 14, 2020.  She contends that the trial court abused its discretion by issuing the restraining order without viewing security camera footage and that there was insufficient evidence to support the restraining order.  We disagree and affirm the order.

## BACKGROUND

On June 23, 2020, Tiffany W. filed a request for civil harassment restraining orders (Judicial Council Forms, form CH-100) against Miranda.  Tiffany stated that Miranda was a tenant in a building Tiffany manages and that on April 8, 2020, Miranda violated the parties' civil harassment mediated settlement dated July 17, 2019 (2019 settlement agreement).  Tiffany listed two prior Alameda County civil harassment cases Miranda filed against Tiffany in 2019, one of which resulted in the 2019 settlement agreement, which Tiffany attached to her request.  The 2019 settlement

1

agreement states that Tiffany and Miranda will "avoid unnecessary communication of all kinds" and that any necessary communications "will be brief, polite and confined to the issue at hand." It further states: "Whenever possible, communications will be confined to those between [Miranda] and [Dorothy M.].[1] When a new assistant manager is hired for the property . . . where [Miranda] resides, the new assistant manager will be available to communicate with [Miranda], if [Dorothy] is not available. Only as a last resort in the case of emergency may communications be between [Miranda] and [Tiffany]. All communications shall be by email, except if an inspection or work must be done at the leased premises requiring a representative from the property management company to be present." The parties agreed not to initiate new civil harassment proceedings unless there was a violation of the agreement.

Tiffany's request alleged that she has managed the property at issue since 2007 and that she is required to visit the property at times as part of her employment. She further alleged that her supervisor, Dorothy, had asked her to download security footage at the property. On April 8, 2020, Tiffany arrived at the property at 10:34 a.m. When she parked her car, she saw Miranda leaving the property with her dog. After Tiffany completed a phone call in her car, she went to the building's storage room to download the security footage. Tiffany saw Miranda return to her apartment with her dog, and then Miranda went back outside to her own car. Tiffany could see Miranda on one of the security cameras. Miranda pulled things out of her car and put them back; wiped her car with a towel; paced back and forth; and at times sat on the open hatchback of her car, bouncing her leg. Miranda looked over at Tiffany's parked car multiple times. Tiffany alleged Miranda

---

[1] Dorothy is Tiffany's supervisor.

2

remained at her car the entire time Tiffany was in the storage room, which was about four hours.  Tiffany believed Miranda was intentionally stalking her and waiting to confront her.  Tiffany alleged she walked back to her car at approximately 2:15 p.m.  As Tiffany walked by Miranda, Tiffany neither made eye contact with nor spoke to her.  Miranda, who had her phone to her ear, made a comment that "she was going to resurrect that one (meaning me)," and she stared at Tiffany.  Miranda took multiple pictures of Tiffany and started to walk toward her.  Tiffany got into her car and could see through her side mirror that Miranda continued taking pictures of her and her car.  Tiffany alleged she honked her horn because Miranda was standing behind her car.  Miranda continued taking pictures, and Tiffany rolled down her window to photograph Miranda.  Miranda yelled at Tiffany, saying, " 'You ain't even supposed to be here and you better get out of here.' "  Tiffany responded that she managed the property and was there to do her job.  Tiffany then backed up and left the property.  Tiffany alleged that she had security footage of the incident.  She further alleged that she is afraid of Miranda and has been under stress for many years due to harassment from Miranda.

On July 8, 2020, Tiffany submitted a flash drive to the court, along with a summary of the events captured on the security footage.[2]  The summary was consistent with the allegations in Tiffany's restraining order request.

---

[2] The trial court filed a "Receipt/Acknowledgement of Electronic Media" stating that the flash drive was submitted to the court with the attached outline of events.  The receipt/acknowledgment further states:  "The party understands this electronic media will not be transcribed or entered into the case management system by the clerk and will remain in its present state. The Court may order the submission of a paper copy should the enclosed electronic media require entry into the case management system."

On July 10, 2020, Miranda filed a response to Tiffany's request in which she denied the allegations but acknowledged she interacted with Tiffany on April 8, 2020. Miranda asserted that her "limited interaction with [Tiffany] was due to [her] concern about [Tiffany's] presence at the premises without a mask."

At the hearing on Tiffany's request, Tiffany testified that the statements made in her request were true and correct. The trial court noted that Tiffany had submitted a flash drive and a written description of the video files contained on the flash drive. However, the trial court stated it had not viewed the videos because "we don't put other people's media into the system for security reasons . . . ." In response to the trial court's question, Tiffany stated that since the 2019 settlement agreement between the parties, she had not had any interactions with Miranda other than the incident on April 8, 2020. Tiffany then described what occurred on April 8. Her testimony aligned with her written allegations. She further testified that as manager of the property she has dealt with Miranda for 11 years and she does not feel safe going to the property because of harassment from Miranda.

Miranda testified that she never threatened Tiffany and that Tiffany violated the 2019 settlement agreement by coming to the property. Miranda admitted she was at her car "unloading things" but said she did not know Tiffany was there until she saw Tiffany walk past her. Miranda testified Tiffany laughed at her, threatened her, and said something derogatory. However, Miranda could not hear all of what Tiffany said. Miranda further testified that she then complained that Tiffany was not wearing a mask and told Tiffany that she should not be on the property because of the 2019 settlement agreement. Miranda said she was talking into her own phone and recording herself with her phone. She denied taking any photos of Tiffany.

4

The trial court found clear and convincing evidence of harassment, as Tiffany described, on April 8, 2020.  The trial court also referred to the prior history between the parties, including the case that resulted in the 2019 settlement agreement.  Miranda was ordered to stay at least 10 yards away from Tiffany for two years.

## DISCUSSION

### I.  *Statutory Overview and Standard of Review*

Code of Civil Procedure[3] section 527.6, subdivision (a)(1) states:  "A person who has suffered harassment . . . may seek . . . an order after hearing prohibiting harassment . . . ."  Harassment includes "a knowing and willful course of conduct directed at a specific person that seriously alarms, annoys, or harasses the person, and that serves no legitimate purpose.  The course of conduct must be that which would cause a reasonable person to suffer substantial emotional distress, and must actually cause substantial emotional distress to the petitioner."  (§ 527.6, subd. (b)(3).)  Further, "course of conduct" is defined as "a pattern of conduct composed of a series of acts over a period of time, however short, evidencing a continuity of purpose, including following or stalking an individual . . . ."  (§ 527.6, subd. (b)(1).)

"In assessing whether substantial evidence supports the requisite elements of willful harassment, as defined in . . . section 527.6, we review the evidence before the trial court in accordance with the customary rules of appellate review.  We resolve all factual conflicts and questions of credibility in favor of the prevailing party and indulge in all legitimate and reasonable inferences to uphold the finding of the trial court if it is supported by substantial evidence which is reasonable, credible and of solid value."  (*Schild v. Rubin* (1991) 232 Cal.App.3d 755, 762.)  Whether the facts are legally

[3] All statutory references are to the Code of Civil Procedure.

sufficient to constitute civil harassment within the meaning of section 527.6 is a question of law reviewed de novo. (*R.D. v. P.M.* (2011) 202 Cal.App.4th 181, 188.)

## II. *Failure to view video was not an abuse of discretion.*

Miranda contends the trial court abused its discretion by issuing the restraining order without first viewing the surveillance video. She claims the trial court admitted the video into evidence but then failed to view it. According to Miranda, the video would have "informed the court's ability to assess the credibility of the parties . . . ." Contrary to Miranda's representations, the surveillance video, which was submitted to the court by Tiffany, was not admitted into evidence. During the hearing, Tiffany never asked to move the video into evidence, and the trial court stated that it would not be viewing the video contained on the submitted flash drive. When Miranda later complained that she was not given a copy of the video, the trial court again stated that it had not viewed the video and that it was relying on testimony. Neither Tiffany nor Miranda objected to the court's statement that it would not be viewing the video. Nor did either of them request that the video be admitted into evidence. Miranda's argument is without merit. (See *People v. Espinoza* (2002) 95 Cal.App.4th 1287, 1303–1304 [appellate contention held meritless because defendant failed to proffer evidence and trial court never made a ruling excluding that evidence].)

However, even if we were to assume that the trial court excluded the video from evidence, we would find no abuse of discretion. The trial court had discretion to make the necessary findings and assess the parties' credibility based upon their testimony regarding the April 8 incident and the information provided in the 2019 settlement agreement. (Evid. Code, § 352.) Further, although Miranda contended during the hearing that there was no

6

basis for a restraining order, she did not dispute that she was outside by her car on April 8th, while Tiffany was working on the property, and that when Tiffany walked to her car to leave the property, Miranda approached her and questioned why she was on the property.  The trial court could have reached a reasonable conclusion that viewing the video would have no material effect on the outcome of the proceeding because it was cumulative of the parties' testimony.  (Evid. Code, § 352.)

*Schraer v. Berkeley Property Owners' Assn.* (1989) 207 Cal.App.3d 719, on which Miranda relies, is inapposite.  *Schraer* reversed a civil harassment restraining order where the trial court had "expressly refused to permit the introduction of oral testimony, and based its decision entirely on written declarations, newspaper articles and the arguments of counsel."  (*Id.* at p. 731.)  Here, the court reviewed the parties' written submissions and then heard testimony from both parties.  We do not reweigh the evidence or reassess the credibility of witnesses.  Those determinations are for the trial court.  (*Williams v. Hilb, Rogal & Hobbs Ins. Services of California, Inc.* (2009) 177 Cal.App.4th 624, 643.)

## III.  *Evidence was legally sufficient to support issuance of restraining order.*

Miranda argues the evidence was insufficient to support the issuance of the restraining order for three reasons:  (1) the single interaction on April 8, 2020, does not constitute a course of conduct; (2) a reasonable person would not be seriously alarmed, annoyed or harassed by the April 8 interaction; and (3) the April 8 interaction served Miranda's legitimate purpose in documenting a violation of the 2019 settlement agreement.  None of these contentions has merit.

Miranda asserts the restraining order was based on a "single interaction," which cannot constitute a "series of acts" under section 527.6,

subdivision (b)'s definition of "course of conduct."  She relies on *Leydon v. Alexander* (1989) 212 Cal.App.3d 1, in which the court reversed a civil harassment restraining order issued against a former employee who, eight years after he had been terminated, went to his former place of employment and confronted his former supervisor and the supervisor's coworkers.  During a five-minute encounter, the former employee used foul language and then left.  (*Id.* at p. 3.)  The court found that this single encounter did not constitute a course of conduct under section 527.6, subdivision (b).  (*Leydon*, at p. 4)  *Leydon* is distinguishable because here it is undisputed that the parties had a history of prior restraining order requests, including the 2019 settlement agreement, in which they agreed to avoid unnecessary communications and to communicate in writing rather than face-to-face.  (See *R.D. v. P.M., supra*, 202 Cal.App.4th at p. 189 [proper for trial court to consider record of prior harassment when determining whether to issue second restraining order].)

Miranda also asserts that the single statement she made to Tiffany, stating that Tiffany was not supposed to be on the property, was only of a brief duration and was not as intense as the incident in *Leydon*.  Her argument neglects to consider the evidence that once Miranda noticed Tiffany's car in the parking lot, Miranda remained outside by her own car for nearly four hours and repeatedly looked over at Tiffany's car.  Then, when Tiffany began walking to her own car to leave the property, Miranda followed and photographed her, and then yelled at her.  We find that the evidence, including the history between the parties—which the trial court expressly acknowledged—is sufficient to support a finding of a "knowing and willful course of conduct directed at a specific person that . . . harasses the person . . . ."  (§ 527.6, subd. (b)(3).)

8

Next, Miranda asserts the April 8, 2020 interaction was too "transitory and low-intensity" to cause a reasonable person to suffer serious emotional distress as required by section 527.6. Again, Miranda's argument focuses only on the moment Miranda yelled at Tiffany and ignores the parties' prior history and the fact that Miranda waited outside for approximately four hours to confront Tiffany and then followed Tiffany to her car. There is substantial evidence from which the trial court could find that a reasonable person would be seriously alarmed, annoyed, or harassed based on the April 8 interaction and the history between the parties.

Finally, Miranda argues her interaction with Tiffany served the legitimate purpose of enforcing the 2019 settlement agreement and, therefore, cannot constitute harassment under section 527.6. Miranda argues that she believed Tiffany violated the 2019 settlement agreement by being on the property and that the agreement required that a new manager would manage the property. However, the 2019 settlement agreement does not forbid Tiffany either from managing the property or from being on the property. Although the 2019 settlement agreement states, "When a new assistant manager is hired for the property . . . , the new assistant manager will be available to communicate with [Miranda]," it does not specify that Tiffany will no longer manage the property in the interim. Substantial evidence supports the trial court's finding that Miranda's behavior on April 8 did not serve a legitimate purpose.

## DISPOSITION

The trial court's order is affirmed.

9

_____

Jackson, P. J.


WE CONCUR:


_____

Simons, J.


_____

Burns, J.


A160948/*Tiffany W. v. Miranda H.*

10