Filed 3/28/25  Zimmergarger v. Cimbat CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA


| | |
|---|---|
| LILLIAN ZIMMERGARGER, | D084569 |
| Petitioner and Respondent, | |
| v. | (Super. Ct. No. 37-2024-00026316-CU-HR-EC) |
| FAITH CIMBAT, | |
| Respondent and Appellant. | |

APPEAL from an order of the Superior Court of San Diego County, Matthew Brower, Judge.  Affirmed.

Goldman Legal and Andrew Flores, for Respondent and Appellant.

Lillian Zimmergarger, in pro. per., for Petitioner and Respondent.

Lillian Zimmergarger obtained a three-year civil harassment restraining order against her next-door neighbor, Faith Cimbat.  On appeal, Cimbat contends her alleged harassment consisted of constitutionally protected activities or activities with legitimate purposes that were unlikely to continue in the future such that she was improperly restrained.  On the inadequate record of appeal, we disagree and accordingly affirm the restraining order.

## I.

### A.

In April 2024, Zimmergarger and Cimbat lived in adjacent units in a townhome community, with Zimmergarger in unit 229.  One day, Cimbat posted on the community's social media page, complaining, "This person that moved next to me in unit 229 is fucking disgusting."  In the post, she insinuated Zimmergarger was entertaining other men while her husband was deployed.  Cimbat also stated Zimmergarger was the source of a cockroach infestation, had a "mental breakdown," owned "reek[ing]" dogs whose feces she failed to clean up, and allowed her "autistic son" to "poop" in the front yard.  After several days, the administrator for the community social media page removed Cimbat's post.  Cimbat tried to repost it, but it was taken down again.

The post caused Zimmergarger to realize Cimbat was "watching [her] and [her] family," likely with the aid of her security cameras.

Throughout the month of April, Cimbat complained to the community's management office about noises coming from Zimmergarger's house during non-quiet hours and the smell of Zimmergarger's dogs.

Cimbat also began "putting trash bags full of dirty baby diapers behind [Zimmergarger's] back patio gate," which Cimbat "intentionally" left "open with the diapers spilled all over where [Zimmergarger] can step on them," and "putting a hot barbecue grill behind [Zimmergarger's] gate so [sh]e would knock the grill over when [sh]e opened" it.

Cimbat would yell from her property that Zimmergarger "'should go back to wherever [she] came from'" and would bang on the walls "throughout the day."

Around the same time, Cimbat falsely reported to the management company that Zimmergarger's and her husband's cars were inoperable, which prompted management to send Zimmergarger a violation letter.

Cimbat began parking in the spot directly in front of Zimmergarger's house "as a way of trying to intimidate" her, according to Zimmergarger. Cimbat never before parked there, as she owned two cars and had a two-car garage. The Zimmergargers, meanwhile, routinely used the parking spot because they could not fit all three of their cars into their two-car garage.

At the end of May, Cimbat reported to Child Welfare Services that Zimmergarger's son "poops outside and is being abused," prompting a welfare check during which Zimmergarger's children were forced to undress to check for signs of abuse.

## B.

When she applied for a civil harassment restraining order against Cimbat days after the welfare check, Zimmergarger represented "things have been getting more aggressive and scary," and she "fe[lt] unsafe in [her] home and afraid to go outside at all" because Cimbat was "constantly watching [her] and [she] d[id]n't know what w[ould] happen next." A temporary restraining order issued that day.

Cimbat's response accused Zimmergarger of making "false allegation[s]."

After an unreported evidentiary hearing at which both Zimmergarger and Cimbat testified and "having fully considered the arguments of all parties, both written and oral, as well as the evidence presented," the court issued a three-year civil harassment restraining order against Cimbat that protected Zimmergarger, her husband, and their children.

3

Cimbat filed an untimely request for a statement of decision.  (See Cal. Rules of Court, rule 3.1590(n).)  None issued.

## II.

We first outline the relevant civil harassment law before addressing Cimbat's claims on appeal.

## A.

Section 527.6 of the Civil Procedure Code allows "[a] person who has suffered harassment" to "seek a temporary restraining order and an order after hearing prohibiting harassment."  An order shall issue "[i]f the judge finds by clear and convincing evidence that unlawful harassment exists" (§ 527.6(i)) and "is likely to recur" (*Harris v. Stampolis* (2016) 248 Cal.App.4th 484, 499).

As relevant here, the statute defines "harassment" as "a knowing and willful course of conduct directed at a specific person that seriously alarms, annoys, or harasses the person, and that serves no legitimate purpose.  The course of conduct must be that which would cause a reasonable person to suffer substantial emotional distress, and must actually cause substantial emotional distress to the petitioner."  (§ 527.6(b)(3).)  "Course of conduct" is defined as "a pattern of conduct composed of a series of acts over a period of time, however, short, evidencing a continuity of purpose, including following or stalking an individual, making harassing telephone calls to an individual, or sending harassing correspondence to an individual," but "[c]onstitutionally protected activity is not included."  (§ 527.6(b)(1).)

We review the findings supporting a restraining order in the light most favorable to the order for substantial evidence (*R.D. v. P.M.* (2011) 202 Cal.App.4th 181, 188), "account[ing] for the level of confidence [the clear and convincing evidence] standard demands" (*Conservatorship of O.B.* (2020)

4

9 Cal.5th 989, 995).  Yet whether those facts "are legally sufficient to constitute civil harassment under section 527.6, and whether the restraining order passes constitutional muster, are questions of law" we review de novo. (*R.D.*, at p. 188.)

We do not reweigh the evidence.  (*E.G. v. M.L.* (2024) 105 Cal.App.5th 688, 699.)  Instead, we "give due deference to how the trier of fact may have evaluated the credibility of witnesses, resolved conflicts in the evidence, and drawn reasonable inferences from the evidence."  (*O.B.*, 9 Cal.5th at p. 996.)

B.

Cimbat claims the trial court erred in granting Zimmergarger's requested civil harassment restraining order because (1) her complaints to the management office and Child Welfare Services were constitutionally protected activity and (2) the social media post was the only possible harassing incident, and a lone event is unable to qualify as a course of conduct likely to continue absent the issuance of a restraining order.  We conclude, however, Cimbat fails to show entitlement to relief on these claims given the state of her briefing and the record.

First, when challenging the sufficiency of the evidence, the appellant is "'required to set forth in their brief *all* the material evidence on the point and *not merely their own evidence*.  Unless this is done the error is deemed to be'" forfeited.  (*Foreman & Clark Corp. v. Fallon* (1971) 3 Cal.3d 875, 881.) Cimbat omits from her opening brief any reference to a significant portion of her allegedly harassing conduct, like intentionally putting trash bags overflowing with dirty diapers and a hot barbecue grill near Zimmergarger's gate, yelling insults and banging on their shared walls, and attempting to repost her social media post about Zimmergarger.  Accordingly, Cimbat forfeited her challenges to the sufficiency of the evidence.

Even absent forfeiture, the deficient record also dooms Cimbat's appeal. Where, as here, there is no record of the oral proceedings below, "[t]he sufficiency of the evidence is not open to review. The trial court's findings of fact and conclusions of law are presumed to be supported by substantial evidence and are binding on the appellate court, unless reversible error appears on the record." (*Bond v. Pulsar Video Productions* (1996) 50 Cal.App.4th 918, 924.)

This presumption creates a high hurdle for Cimbat to clear. In issuing the restraining order, the court implicitly (1) found Zimmergarger's testimony and evidence more credible than Cimbat's and (2) concluded that testimony and evidence supported each of the elements required for the restraining order to issue—including that the activities in question were neither constitutionally protected nor for a legitimate purpose. As we lack any record of the testimony presented at the hearing, we are unable to assess, and therefore must presume, the existence and accuracy of those findings and the facts underlying them. As a result, Cimbat's only hope is to establish reversible error on the face of the record.

Cimbat again falls short, as no reversible error appears on the face of the record. To start, the record does not foreclose finding Cimbat's actions not constitutionally protected. The First Amendment right to free speech is not unqualified. (*Balboa Island Village Inn, Inc. v. Lemen* (2007) 40 Cal.4th 1141, 1147.) Defamation is not constitutionally protected. (*Ashcroft v. Free Speech Coalition* (2002) 535 U.S. 234, 245-246.) As Cimbat concedes, defamatory social media posts can be harassing conduct under section 527.6. (Citing *E.G.*, 105 Cal.App.5th 688.) We presume—as we lack an adequate record to determine otherwise—the court found Cimbat's social media post

false and defamatory and therefore not constitutionally protected.[1] To the extent Cimbat relies on *Hansen v. Volkov* (2023) 96 Cal.App.5th 94 to argue her social media post was protected speech, that case, which involved a lawyer's e-mails to opposing counsel, is factually distinguishable. (*Hansen*, at pp. 104-105.) Similarly, it is illegal for a voluntary reporter to make knowingly false reports of child abuse. (Pen. Code, § 11172(a).) While Cimbat claims Zimmergarger "has provided no evidence of the falsity of any [CWS] report . . . or that [Cimbat] in fact made any report at all," the state of the record does not allow us to credit this argument, as the record facially discloses no reason to disagree with the court's implicit finding that the report to CWS was neither constitutionally protected nor for a legitimate purpose.

Next, Cimbat has not met her burden to show the record precludes finding a course of conduct. We agree with Zimmergarger that Cimbat "mischaracterizes her actions and would like this court to believe that there was only 'a post' on the community [social media] page on one day which was the basis for the permanent restraining order." Cimbat's position is belied by the minute order of the evidentiary hearing. The court noted it "fully considered the arguments of all parties, both written and oral, as well as the evidence presented," and listed 14 photographs, seven additional pages of photographs, multiple text messages and social media conversations between the parties, and screenshots of the social media post as exhibits received into evidence. As the court provided no reasoning for its ruling, and construing

---

[1] While Cimbat argues "a restraining order is not the venue for a demand of defamation," Zimmergarger made no "demand of defamation"; defamation is simply a basis for concluding the speech in question was not constitutionally protected, which is a conclusion the trial court was entitled to make.

the minute order in favor of the judgment, we must presume the court considered incidents beyond the social media post in determining the restraining order was warranted. *Leydon v. Alexander* (1989) 212 Cal.App.3d 1, relied on by Cimbat, is accordingly distinguishable.

Section 527.6 requires only that a course of conduct consist of "more than one act." (*E.G.*, 105 Cal.App.5th at pp. 699-700, citing § 527.(6)(b)(1).) "[T]he trial court views the evidence as a whole, including incidents that, if viewed in isolation, might seem trivial, but cumulatively could constitute a harassing course of conduct." (*E.G.*, at p. 700.) Even overlooking activity like parking in front of Zimmergarger's house or installing security cameras, which activities Cimbat claims she "ha[d] every right to do," and Cimbat's complaints to housing management, the alleged acts spanned several months and were still occurring—indeed, escalating—just days before the temporary restraining order issued. We presume the testimony at the hearing established the acts were ongoing. The court did not err in (1) finding that, considered as a whole, this was a continuing course of harassing conduct, and (2) implicitly concluding it was likely to continue absent the grant of an injunction.

### III.

We affirm. Zimmergarger is entitled to her costs on appeal.

CASTILLO, J.

WE CONCUR:

IRION, Acting P. J.

RUBIN, J.

8