[No. D003456. Fourth Dist., Div. One. Sept. 30, 1985.]

CANDICE SUE COLE, Petitioner, v.
THE SUPERIOR COURT OF SAN DIEGO COUNTY, Respondent;
DOUGLAS G. COLE, Real Party in Interest.

**COUNSEL**

Virginia Ely for Petitioner.

No appearance for Respondent.

Susemihl & Davis, Terry A. Davis, Mitchell, Ashworth, Keeney, Barry & Pike and Brian H. Todd for Real Party in Interest.

**OPINION**

**STANIFORTH, Acting P. J.**—This is a proceeding under the Uniform Child Custody Jurisdiction Act (UCCJA), California Civil Code section 5150 et seq. The San Diego Superior Court, following a telephone conference with the superior court of Maricopa County, Arizona, declined to exercise jurisdiction over this custody matter, deferring to the Arizona fo-

rum based on the following findings: that Arizona is the home state of the parties under Civil Code section 5151, subdivision (5); that Arizona is the more appropriate forum to determine custody of the children; that it is in the children's best interests that Arizona assume jurisdiction because "the child" was a resident of Arizona for approximately 10 months just before being taken to California by the wife; that the witnesses to conditions just before the parties separated are in Arizona; and that the wife, Mrs. Candice Cole (Candice) unilaterally, wrongfully and without notice to the husband, Douglas Cole (Douglas) took the children to California. The court also said there are insufficient facts to establish the emergency doctrine because there is no evidence that Douglas has mistreated the two children who are children of his marriage to Candice. The court ordered Candice to appear with the children in the Arizona court, but stayed its order for 45 days to permit extraordinary review in this court. We have stayed the order pending resolution of the matter.

Candice filed a petition here seeking a writ of mandate ordering the Superior Court of San Diego County to take jurisdiction of this matter, or alternatively, to hold further hearings to permit her to establish that the home state is California and that an emergency exists. She also seeks a determination that Douglas is in default on her related petition filed in San Diego for a legal separation, the determination of which matter has trailed the outcome of the UCCJA proceedings.

A preliminary matter must be disposed of. Candice moved in this court to strike Douglas' response to the petition because the response was signed only by Douglas' Arizona counsel, who is not a member of the California Bar. That situation has, however, been cured by the later-filed letter of a California attorney verifying the response to the petition as though he had written it and stating he appears specially in this court on behalf of Douglas. Accordingly, we have considered the response and the motion to strike is denied.

The facts from the parties' declarations show this story: Douglas and Candice were married in San Diego on July 18, 1981. He was a Navy man and travelled extensively, but the couple regarded this as their residence and filed California income tax resident returns through 1984. Their first child, a son, Justin, was born here on April 13, 1983. Candice also has an older daughter, Ida, of an earlier marriage, presently aged 11, whose custody is not in issue. At some point in 1984, Douglas expressed a desire to relocate to the Phoenix, Arizona area, where he had family and job prospects, in order to establish himself in civilian life, but Candice at first resisted, being a 15-year resident of San Diego with family and friends here, and having a California state cosmetologist's license. However, she finally

agreed, as she puts it, to give Arizona a temporary try, and she relocated there with Douglas on June 13, 1984, at a time when she was pregnant with the couple's second child, Krystina, who was born in Arizona on December 24, 1984.

Candice stayed in Arizona 10 months. She claims that the marriage deteriorated during that time, that her in-laws were abusive and wanted to take away the young children, and that Douglas beat and abused her and Ida. Finally, on the advice of an Arizona school psychologist (a Dr. Alexander Kaydrie, whose testimony we do not have), she decided to return to San Diego. She claims to have given Douglas ample notice of her decision and to have provided him with the address and phone number of her girlfriend in Coronado with whom she now lives; he denies this and claims she unilaterally and secretly left with the children. In any case, she did leave with the three children on April 10, 1985, and has been in San Diego since then.

Another reason she gives for her decision to leave Arizona and for her present resistance to having the matter of custody tried in Arizona is that because she is indigent (since Douglas will give her no money), she is completely unable to get an attorney in Arizona. What public assistance lawyers there are claim she is not qualified for their services because in Arizona, she was living with her husband, and his money counted as hers also. In San Diego, however, she was able to get attorney representation through a volunteer program. Also, she has a support system here, namely a place to live, friends and family, and she is on welfare here. Thus, at the jurisdictional hearing, Candice offered to stipulate to Arizona jurisdiction if the Arizona court could guarantee her a lawyer, which it of course could not do. Thus, Candice claims that an issue in this case, in addition to the statutory jurisdictional analysis under Civil Code section 5152, is the due process problem of her access to legal representation in this important matter of her right to custody of her two youngest children.

After Candice returned to San Diego, Candice and Douglas both filed marital actions in their respective states, Douglas filing a divorce action in Arizona on April 22, 1985, and Candice filing in San Diego for a legal separation on May 3, 1985. There is factual conflict about which action was served first; it is not disputed that Douglas was personally served with the San Diego action May 16, 1985. It is disputed that Candice was "formally" served with the Arizona action June 4, 1985, (which would make the California court the first to assume jurisdiction) and there is dispute also whether Candice was served earlier, by mail, with the Arizona action in April 1985.

Next came the setting of a telephonic conference between the superior courts in San Diego and Arizona in the UCCJA matter. In connection with

the setting of this conference, Candice's attorney claims due process violations. She says she had to be on the east coast on business from June 1 through June 24, 1985; that she so informed Douglas' Arizona counsel (Davis) on May 24, by letter and by phone; but that he nevertheless arranged to have the conference set on June 26, two days after her return, leaving insufficient time for preparation of the evidence, particularly the affidavit of the Arizona school psychologist which, according to Candice, would establish the existence of emergency conditions as to her and the children. At the hearing on June 26, Candice's attorney did attempt unsuccessfully to secure a continuance, and she now claims due process abuse because of her inability to make a full and accurate showing on the UCCJA issues. (In addition to the UCCJA issues, she also claims preclusion from proving the lack of any service of the Arizona action on Candice. The court gave that issue short shrift since its ultimate determination was to send the case back to Arizona.)

On June 26, the California court, after conferring with a judge in the Arizona court, ruled as stated above that Arizona is the home state and the proper state for determination of the custody matter.

Candice argues strenuously that the trial court erred because first, the hearing held on such short notice precluded her establishing (1) that there was an emergency as to the children and (2) that she was not served with Arizona process and hence that a California court was the first to be exercising jurisdiction, per Civil Code section 5155, which would make a stay in favor of Arizona inappropriate. Also she wants to prove that the taking of the children was not unilateral.

Further, she says her inability to obtain counsel in Arizona is a substantive due process restriction upon her fundamental right as a parent, making the order to litigate in Arizona unconstitutional. Also, under section 5152 she contends California has jurisdiction because it is really the home state, Arizona being merely a place where she went temporarily with every intention to return here. In this regard she seeks to rely on our *Lontos* case (*In re Marriage of Lontos* (1979) 89 Cal.App.3d 61 [152 Cal.Rptr. 271]), analogizing her temporary presence, helpless and indigent, in Arizona to the wife's abandonment in New Mexico in *Lontos*. She also contends there is significant connection with California and substantial evidence available here (Civ. Code, § 5152, subd. (1)(b)), so that it is in the children's best interests that this court assume jurisdiction. She also contends abuse and mistreatment amounting to an emergency (Civ. Code, § 5152, subd. (1)(c)(ii)).

In response to the petition, Douglas says Candice never proved inability to retain counsel in Arizona nor existence of any emergency; the basis al-

leged for an emergency was insufficient because she only declared that Douglas imposed psychological and physical abuse on Candice and on the older child, Ida, and did not say that he abused the two children of the marriage whose custody is in issue. (That argument is also the basis for the trial court's finding that there was no emergency.) He further argues there are valid bases for jurisdiction in Arizona: that Arizona was the home state of both children immediately before their removal to California and that Candice has unclean hands because she unilaterally took the children to California, a basis to deny her a forum here (Civ. Code, § 5157, subd. (1)). Further, the Arizona attorney argues Candice's attorney never clearly informed him that she would be out of the state for much of June and would require more time before the jurisdictional hearing.

■ Our conclusions are as follows: First, when proceedings are convened to determine so vital and fundamental a right as the custody of children, material issues in such proceedings should not be resolved on the basis of immaterial considerations. Thus, however unclear, or even dilatory, may have been the behavior of Candice's attorney (as a matter of argument only), and also, no matter which party managed to effect service first in the marital actions, the basis to resolve the jurisdictional issue remains the welfare of the children (see, e.g., Comment, *The Uniform Child Custody Jurisdiction Act and the Continuing Importance of Ferreira v. Ferreira* (1974) 62 Cal.L.Rev. 365, 371). That is the only important consideration and is the underlying purpose of the UCCJA (Civ. Code, § 5150).

■ Here, Candice attempted to show that an emergency existed compelling her to remove the children to California. She requested a continuance to offer this proof, which was denied for no reason set forth on the record. The trial court found no emergency existed, based on the argument that allegations of Douglas' physical violence and emotional abuse of his wife and stepdaughter were not the technical equivalent of allegations of an emergency respecting Justin and Krystina. Without presuming to usurp the role of expert witnesses in this matter, we venture a guess that when the mother of two young children is forced from the family home because the husband abuses her and her daughter of another marriage, the situation may also have great potential for the abuse and serious traumatization of her younger children by him. Not only are they deprived, by his conduct, of their mother's care and love, but they are left in the care of one demonstrably capable of abusive behavior in some familial situations. We conclude the situation which Candice has alleged, if it is proven to exist, is tantamount to an emergency respecting the younger children also, possibly justifying Candice's removal of them and certainly negating any finding that she has "unclean hands" because she took them away. ■ Accordingly, since Candice had alleged the basis for a possible emergency situation, she

should have been given a reasonable time to amass the evidence to prove her contentions.

 Further, the trial court found Arizona to be the home state, based on a narrow focus on the fact that the parties' last residence was there. Its approach misses the point we discussed in *Lontos,* that in some circumstances removal to another state may be purely temporary and may not change an earlier domicile of long duration. We note if Candice's declarations are true, there are substantial bases to find jurisdiction in California, based on the parties' long residence here; Justin's birth here; and the fact at least one parent may never have regarded Arizona as a permanent home. At any rate, these are matters which should have been resolved after a full and fair evidentiary hearing and not in a rush to judgment in which the wife was unprepared to present her case. If, after a full hearing, the trial court should find, as Candice has alleged, that the family's presence in Arizona was temporary and tentative, then it might well conclude California is the home state of Candice and Justin and the appropriate forum to try the custody issues (Civ. Code, § 5152, subd. (1)(b)).

 California Civil Code section 5153 says "[b]efore making a decree under this title, reasonable notice and opportunity to be heard shall be given to the contestants, . . ." Here, we find the trial court abused its discretion in not permitting Candice a reasonable amount of time before the jurisdictional hearing to assemble her proof on the issues of emergency, home state, and clean hands issues under the UCCJA. We conclude she is entitled to some of the relief she seeks. We decline, however, to make any ruling on the issues related to her action for legal separation against Douglas, because the trial court has expressly deferred its ruling there pending this matter, and there is no final order to review.

An alternative writ or order to show cause would add nothing to the presentation. A peremptory writ is proper. (Code Civ. Proc., § 1088; *United Nuclear Corp.* v. *Superior Court* (1980) 113 Cal.App.3d 359 [169 Cal.Rptr. 827]; *Goodenough* v. *Superior Court* (1971) 18 Cal.App.3d 692, 697 [96 Cal.Rptr. 165].)

Let a peremptory writ of mandate issue ordering the trial court to vacate its order declining jurisdiction in this matter and to reschedule a jurisdictional hearing under the UCCJA at a time when petitioner can reasonably be expected to be ready for trial. The court shall reconsider the issue of the appropriate forum to determine the custody matter along the lines set forth in this opinion. The petition is otherwise denied. Our temporary stay of the

order directing Candice to appear in Arizona shall remain in effect until the trial court has redetermined the jurisdictional issue as we have ordered.

Butler, J., and Brainard, J.,* concurred.

---

*Assigned by the Chairperson of the Judicial Council.