[No. B135613. Second Dist., Div. Four. Jan. 25, 2000.]

JENNIFER L. HAYWOOD, Petitioner, v.
THE SUPERIOR COURT OF LOS ANGELES COUNTY, Respondent;
BREYOUND HAYWOOD, Real Party in Interest.

**COUNSEL**

Law Offices of Jeffrey W. Doeringer and Jeffrey W. Doeringer for Petitioner.

No appearance for Respondent.

Minyard & Morris and Steven G. Hittelman for Real Party in Interest.

**OPINION**

**CURRY, J.**—Petitioner Jennifer L. Haywood sought a writ directing the family court to vacate its order dismissing her marital dissolution action and directing the trial court to exercise exclusive jurisdiction over the issue of child custody. The family court subsequently vacated the dismissal order and asserted jurisdiction over child custody, but did not determine whether the orders of a Michigan court regarding child custody were entitled to full faith and credit. We grant the peremptory writ to the extent necessary to accord the relief sought regarding jurisdiction over child custody.

### FACTUAL AND PROCEDURAL BACKGROUND

On or about May 24, 1999, real party in interest Breyound Haywood filed a complaint for divorce in Michigan (hereafter the Michigan action). The

complaint alleges that Breyound had resided in Michigan for at least 180 days, that Jennifer, his wife, was residing in California as of May 10, 1999, and that Jennifer was pregnant and expected to give birth in July 1999.[1] Aside from a judgment of dissolution of marriage, the complaint asks the Michigan court to determine custody of the unborn child and to order Jennifer to return to Michigan.[2]

On June 18, 1999, Jennifer filed a challenge in the Michigan action to the Michigan court's jurisdiction over the divorce, alleging that California had always been her state of residence.

On June 29, 1999, Jennifer filed a petition for dissolution of marriage in California (hereafter the California action). The petition alleges that she had resided in California for at least six months prior to the filing of the petition, and it asks the family court to award her legal custody of the unborn child.

Brianna Irene Bertone-Haywood was born to Jennifer and Breyound on July 22, 1999, in California. On the same date, Breyound asked the court in the Michigan action to issue an order of jurisdiction.

On August 27, 1999, Jennifer requested the entry of Breyound's default in the California action. On August 13, 1999, the court in the Michigan action found that it had jurisdiction over the divorce and the related issue of custody.

On September 20, 1999, the family court in the California action set a hearing for determination of its jurisdiction on October 26, 1999. On September 23, 1999, Jennifer applied ex parte to the family court for orders appointing counsel for Brianna and awarding Jennifer joint legal custody and primary physical custody of Brianna, or, in the alternative, for an order shortening time on the jurisdictional hearing. Breyound made a special appearance in the California action and objected to the ex parte application on jurisdictional grounds. On September 23, 1999, the family court denied Jennifer's ex parte application.

On September 27, 1999, Breyound applied ex parte to the family court for an order dismissing the California action. The family court granted the application and filed an order of dismissal on September 28, 1999. Jennifer filed her petition for writ of mandate on October 1, 1999. We issued an order to show cause and temporary stay on November 29, 1999.

---

[1] Because the parties share a surname, we refer to them by their proper names.

[2] The complaint also alleges that Jennifer has another child from a prior relationship who is unrelated to Breyound. The petition raises no issues concerning this child.

DISCUSSION

The sole issue presented by Jennifer's petition is whether the family court erred in failing to exercise exclusive jurisdiction over child custody.[3]

A. *Mootness*

■ The issue of mootness arises at the threshold of our discussion because on January 6, 2000, the family court vacated its order of dismissal, amended Jennifer's petition to assert an action for legal separation, and asserted jurisdiction over the matter of child custody on the ground that California is Brianna's home state. Jennifer nonetheless urges us to address the central issue presented by her writ petition.

The controversy before us is not moot. As our Supreme Court explained in *Green v. Superior Court* (1974) 10 Cal.3d 616, 622, footnote 6 [111 Cal.Rptr. 704, 517 P.2d 1168], petition for writ relief is not mooted by subsequent events when these events leave a material question affecting the parties unresolved, or the petition presents " 'matter of continuing public interest and the issue is likely to recur . . . .' " (Quoting *Liberty Mut. Ins. Co. v. Fales* (1973) 8 Cal.3d 712, 715-716 [106 Cal.Rptr. 21, 505 P.2d 213].) Here, in vacating the dismissal and asserting jurisdiction over child custody, the family court did not determine whether the Michigan court's orders regarding child custody are entitled to full faith and credit. Moreover, the question presented regarding interstate jurisdiction over child custody is a matter of public importance that will probably recur. We therefore turn to this question.

B. *Jurisdiction*

■ Generally, questions of interstate jurisdiction regarding child custody are settled in California under the provisions of the Uniform Child Custody Jurisdiction Act (Fam. Code, § 3400 et seq.; hereafter UCCJA).[4] (*Wallace v. Superior Court* (1993) 15 Cal.App.4th 1182, 1184 [19 Cal.Rptr.2d 157].) It was adopted in California in 1973 and has now been adopted by every state and the District of Columbia (*id.* at p. 1186), including Michigan (Mich. Comp. Laws Ann. § 600.651 et seq.).

---

[3]In view of the limited focus of Jennifer's petition for writ relief, we do not address whether California has jurisdiction over dissolution of the marriage or any matter other than child custody.

[4]In some instances, questions of jurisdiction are settled by the federal Parental Kidnapping Prevention Act (28 U.S.C.A. § 1738A; hereafter PKPA), which preempts the UCCJA to the extent they may conflict. (*Wallace v. Superior Court, supra*, 15 Cal.App.4th at pp.1186-1187.) No issue requiring a resolution under the PKPA is raised here.

■ Here, the family court dismissed Jennifer's action, concluding that (1) it lacked jurisdiction over divorce and custody because the Michigan court had jurisdiction over these matters, and (2) it should decline jurisdiction in any case because Jennifer had wrongfully removed Brianna from Michigan and had engaged in reprehensible conduct.

■ A finding that California or another state has jurisdiction under the UCCJA is reviewed for substantial evidence. (*In re Marriage of Fox* (1986) 180 Cal.App.3d 862, 869 [225 Cal.Rptr. 823].) The same standard of review applies to a finding that California lacks jurisdiction following a resolution of conflicting evidence. (*Id.* at p. 870.) By contrast, a determination that California lacks jurisdiction when the dispositive facts are uncontested is reviewed for abuse of discretion. (*Id.* at pp. 869-870.)

■ We begin by reviewing the family court's original determination that only the Michigan court had jurisdiction over custody. Under the UCCJA, as enacted in California, the only pertinent bases of jurisdiction in the present case are as follows: "(1) This state (A) is the home state of the child at the time of commencement of the proceeding, or (B) had been the child's home state within six months before commencement of the proceeding and the child is absent from this state because of removal or retention by a person claiming custody of the child or for other reasons, and a parent or person acting as parent continues to live in this state. [¶] (2) It is in the best interest of the child that a court of this state assume jurisdiction because (A) the child and the child's parents, or the child and at least one contestant, have a significant connection with this state, and (B) there is available in this state substantial evidence concerning the child's present or future care, protection, training, and personal relationships." (Fam. Code, § 3403, subd. (a)(1) & (2).)[5] Michigan has enacted substantially similar provisions. (Mich. Comp. Laws Ann. § 600.653(a), (b).)

The first issue is whether California or Michigan has jurisdiction under the "home state" provision. (Fam. Code, § 3403, subd. (a)(1).) Under the UCCJA, as enacted in both states, a child's "home state" is "the state in which the child immediately preceding the time involved lived with the child's parents, a parent, or a person acting as parent, for at least six consecutive months, and *in the case of a child less than six months old* the

---

[5]Aside from these two bases for jurisdiction, a state may also assert jurisdiction under the UCCJA when (i) the child is present in the state and has been abandoned or otherwise needs protection (Fam. Code, § 3403, subd. (a)(3); Mich. Comp. Laws Ann. § 600.653(c)) or when (ii) no other state has jurisdiction and assuming jurisdiction is in the child's best interest (Fam. Code, § 3403, subd. (a)(4); Mich. Comp. Laws Ann. § 600.653(d)). These provisions of the UCCJA are immaterial here. Brianna has not been abandoned, and, as we explain below, California has jurisdiction under another provision of the UCCJA.

state in which the child lived from birth . . . ." (Fam. Code, § 3402, subd. (e), italics added; Mich. Comp. Laws Ann. § 600.652(e).) Here, the record unequivocally indicates that Brianna was born in California after the Michigan and the California actions began, she has since resided exclusively in California with Jennifer, she has never visited Michigan, and she was one or two months old when the jurisdictional determinations were made in Michigan and California.

By the plain language of the definition of the term "home state," only California was Brianna's home state at the time of the jurisdictional determinations. However, because Brianna was unborn when Jennifer initiated the California action, California was not Brianna's home state "at the time of commencement of the proceeding, or . . . within six months before commencement of the proceeding . . . ." (Fam. Code, § 3403, subd. (a)(1).) Accordingly, the record unequivocally establishes that neither state has "home state" jurisdiction.

The second issue is whether California or Michigan has jurisdiction under the "significant connection" provision. (Fam. Code, § 3403, subd. (a)(2)(A).) This provision, unlike the "home state" provision, does not tie jurisdiction to events occurring before or at the time an action is commenced. We therefore examine the evidence before the family court and the Michigan court when they made their jurisdictional determinations.

We begin by assessing the availability in each state of "substantial evidence concerning the child's present or future care, protection, training, and personal relationships." (Fam. Code, § 3403, subd. (a)(2)(B).) Here, Jennifer submitted such evidence to the family court in connection with her ex parte application for a custody order, namely, Jennifer's declaration that she and Brianna were living with Jennifer's parents in California. The record also indicates that the family court apparently relied on Jennifer's ex parte application and related documents in dismissing the California action. By contrast, the record does not contain all the documents submitted in connection with the Michigan court's determination of jurisdiction. However, we decline to find error on a silent record, and thus infer that substantial evidence regarding Brianna's care was before the Michigan court.

The key question, therefore, is whether Brianna has a "significant connection" with California or Michigan. (Fam. Code, § 3403, subd. (a)(2)(A).) We find dispositive guidance on this issue in *In re Marriage of Arnold & Cully* (1990) 222 Cal.App.3d 499 [271 Cal.Rptr. 624]. In *Arnold*, the court concluded that a child had the requisite significant connection solely with Canada, reasoning that although the noncustodial parent resided in California and the child had visited California for 18 days, the child was born and

raised in Canada and she had lived exclusively in Canada, with the exception of short visits to California. Under *Arnold*, California, but not Michigan, has "significant connection" jurisdiction. Because the central facts here are undisputed, substantial evidence does not support the family court's finding that Michigan has custodial jurisdiction, and it abused its discretion in determining that California lacked such jurisdiction.

Michigan law appears to dictate the same result. In *Dean v. Dean* (1984) 133 Mich.App. 220 [348 N.W.2d 725], a married couple's two children were born and resided primarily in Michigan until their parents moved to Texas. (348 N.W.2d at p. 726.) The couple separated, and the children and their mother returned to Michigan, where they lived for approximately two years, with the exception of a month-long visit with their father in Texas. (*Ibid.*) After the parties initiated divorce actions in their respective states of residence, a Texas court awarded the father custody of the children. (*Ibid.*) The court in *Dean* concluded that under these facts, the children lacked a significant connection with Texas under the UCCJA. (348 N.W.2d at p. 727.) Here, as in *Dean*, Brianna was born in California and she has lived exclusively with Jennifer in California. In addition, she has *never* visited Michigan. Under *Dean*, Brianna has a significant connection only with California.

The next issue is whether the temporal priority of the Michigan action and the Michigan court's determination of jurisdiction deprived the family court of jurisdiction regarding child custody. Under the UCCJA, the family court must decline jurisdiction "if at the time of filing the petition a proceeding concerning the custody of the child was pending in a court of another state exercising jurisdiction substantially in conformity with this part . . . ." (Fam. Code, § 3406, subd. (a).) As we have explained, the Michigan court did not exercise jurisdiction in substantial conformity with the UCCJA, and thus the family court erred in deferring to the Michigan court regarding jurisdiction over child custody.

We therefore turn to the family court's second basis for refusing to exercise jurisdiction over child custody, namely, that Jennifer had wrongfully removed Brianna from Michigan and had engaged in reprehensible conduct. Under the UCCJA, the family court may decline to exercise jurisdiction over custody matters when a petitioner "has wrongfully taken the child from another state or has engaged in similar reprehensible conduct . . . ." (Fam. Code, § 3408, subd. (a).)

In our view, the family court's determination on this matter fails for three reasons. First, California courts have generally limited the application of

"wrongful conduct" provision to situations in which a child has been re-moved from a state in violation of an existing custody order or injunction. (*In re Marriage of Fox, supra,* 180 Cal.App.3d at p. 874; *In re Janette H.* (1987) 196 Cal.App.3d 1421, 1428 [242 Cal.Rptr. 567].) The record dis-closes no such order or injunction.

Second, the family court ordered dismissal on the basis of Breyound's ex parte application, and without giving Jennifer an opportunity to assemble and present evidence at a hearing on the issues raised by Breyound's application. This was an abuse of discretion. (*Cole v. Superior Court* (1985) 173 Cal.App.3d 265, 272 [218 Cal.Rptr. 905].)

Third, in ordering the dismissal, the family court apparently relied prima-rily on the parties' submissions in connection with Jennifer's prior ex parte application for a custody award, which the family court had denied. We discern nothing in these submissions that reasonably supports the inference that Jennifer had acted wrongfully or reprehensibly in leaving Michigan for California.

Accordingly, the family court erred in declining to exercise jurisdiction over child custody and in deferring to the Michigan court's determination on this matter. Because Michigan lacks jurisdiction over child custody, Califor-nia is not required to grant full faith and credit to its orders concerning child custody, including orders directing Jennifer or Brianna to return to Michigan to resolve matters involving child custody. (*In re Marriage of Fox, supra,* 180 Cal.App.3d at p. 874; *Wallace v. Superior Court, supra,* 15 Cal.App.4th at p. 1184.) We therefore conclude that Jennifer was entitled to all the relief that she sought regarding jurisdiction over child custody.[6]

## DISPOSITION

The temporary stay order is vacated. Let a peremptory writ of mandate issue directing that respondent family court vacate (1) its order concerning child custody dated January 6, 2000, and (2) any order requiring Jennifer or Brianna to return to Michigan to resolve matters involving child custody, and to enter a new order concerning jurisdiction over child custody in accordance with this opinion, including a determination that orders of the

[6]Jennifer also seeks an award of her attorney fees incurred in this writ proceeding under Family Code sections 2030-2032, 271, and 3407, subdivision (g). However, "[s]uch a request must properly be addressed to the trial court in the first instance . . . ." (*In re Marriage of Schofield* (1998) 62 Cal.App.4th 131, 140-141 [73 Cal.Rptr.2d 1]; Cal. Rules of Court, rule 870.2(c).)

Michigan court concerning child custody are not entitled to full faith and credit.[7] Petitioner is awarded her costs.

Vogel (C. S.), P. J., and Epstein, J., concurred.

---

[7]Because the family court has substantially complied with the relief that Jennifer sought in her petition but asserted jurisdiction over child custody on an incorrect ground, we conclude that the peremptory writ contains the relief appropriate in the circumstances.