Filed 8/26/22 Marriage of Moss and Carroll CA2/3

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION THREE

| | |
|---|---|
| In re the Marriage of JACQUELINE MOSS and WALTER CARROLL. | B312983 |
| | Los Angeles County Super. Ct. No. YD065980 |
| JACQUELINE MOSS, Respondent, v. WALTER CARROLL, Appellant; LOS ANGELES COUNTY CHILD SUPPORT SERVICES DEPARTMENT, Respondent. | |

APPEAL from a post-judgment order of the Superior Court of Los Angeles County, Frank W. Chen, Commissioner. Affirmed.

Walter Carroll, in pro. per., for Appellant.

No appearances for Respondents.

_____

Walter Carroll (appellant), a self-represented litigant on appeal and in the trial court, challenges the trial court's order denying his request to modify a prior child support order to recalculate his support payments based on his actual income. Finding appellant has not demonstrated affirmative error, we affirm.

## BACKGROUND

In accordance with our standard of review, we state the facts—from what we can discern from the appellate record—in the light most favorable to the court's order and draw all reasonable inferences in favor of it. (*In re Marriage of Calcaterra & Badakhsh* (2005) 132 Cal.App.4th 28, 34.)

### 1. *Original child support order*

Appellant and Jacqueline Moss were married and have a minor child. Moss petitioned for divorce in December 2014 and filed a request for child support in September 2018. Following a hearing on February 6, 2019, the court (Judge Bosley in Torrance) ordered appellant to pay $1,100 in monthly child support, plus $275 per month in arrears, based on appellant's capacity to earn $9,803 per month. The court's written order filed March 13, 2019, includes the DissoMaster report, calculating a monthly guideline payment at $1,102 based on appellant's imputed income of $9,803 per month, Moss's income of $6,375 per month, and their child spending 29% of the time with appellant. The court simultaneously issued an income withholding order directed to appellant's then-employer,

the International Association of Machinist and Aerospace Workers (IAMAW).

Appellant apparently had worked for IAMAW since 2015 and earned $9,803 per month as a business representative/ organizer. He declared he had a mental and emotional breakdown in August 2018 due to job-related stress, went on medical leave, and filed a worker's compensation claim alleging psychological disability. The Worker's Compensation Appeals Board (WCAB) denied his claim. In response to Moss's September 2018 request for child support, appellant apparently contended this stress disorder/psychological disability prevented him from working.

According to Moss's counsel, appellant presented documentation at the February 2019 hearing stating he had been placed off work, but the Torrance court found the evidence lacking as to the specific nature of appellant's stress disorder and how it affected his ability to work.[1] Appellant also apparently had declined his employer's offer of a reasonable accommodation. The Torrance court thus apparently determined appellant's allegations about his disability and inability to work were unfounded. Accordingly, when calculating the guideline support payment, the court imputed earning capacity income to appellant based on what he had been making at IAMAW. Appellant immediately filed a motion for reconsideration that the court rejected.

---

[1]     The court apparently wanted detailed information such as how long appellant could sit or lift his hand.

## 2.     *Requests to modify child support*

A few months later, on June 3, 2019, appellant filed a request for order (RFO)—in the Torrance court—asking the court to change the ordered monthly child support and arrears payment and associated income withholding order.  Appellant asserted his employment ended in May 2019, and his application for unemployment was pending.  In his attached declaration, appellant attested he had returned to work around February 1, 2019, but was laid off on May 9, 2019, and thus no longer could afford the $1,375 combined monthly child support and arrears payment.  Appellant averred his current income was zero pending a determination of his unemployment application.  He asked the court to modify the child support based on whatever his income was at the hearing date.

On September 11, 2019, appellant filed a reply declaration in support of his RFO.  This time appellant re-asserted that his stress disorder/disability forced him to take medical leave.  He declared he "tried an unsuccessful return to work" from February 1, 2019 through the end of April 2019 when he "went out again on worker's compensation, as a result of [the] continuing stress-related disorder."  Appellant asserted the WCAB reevaluated his stress disorder claim around April 30, 2019, "with a determination pending."

Appellant declared his "company demoted" him, and he earned $5,300 per month during the three-month period.[2]  Appellant again stated IAMAW laid him off on May 9, 2019

---

[2]     An exhibit to appellant's June 2019 declaration includes his weekly earnings statements for that period.  They show his hourly rate was decreased from $55.05 to $33.23 when he

4

—apparently after he had taken leave.  He asserted he "immediately became eligible for State Disability Benefits" and began receiving $5,300 per month.  Appellant averred he received doctors' notes stating he was disabled from April 30 through July 25, 2019; July 26 through July 31, 2019; and August 1 through September 15, 2019.  He also declared he "subsequently received a determination that [he] was temporarily totally disabled due to a continuing psychological/psychiatric stress disorder and . . . would begin receiving these workers compensation-related benefits on or about May 2019."

The only exhibit appellant attached to his September 2019 declaration is a form "Certificate of Disability and/or Return to Work" dated August 1, 2019, and signed by a qualified medical evaluator (certificate of disability).  The form includes a date range from August 1, 2019 to September 15, 2019, and under remarks states "Mr. Carroll is temp. totally disabled" in handwriting.  The space next to "[d]iagnosis" is blank.

On May 7, 2020, the Los Angeles County Child Support Services Department (CSSD) filed a motion to modify child support (at appellant's request).  That motion apparently was scheduled to be heard on November 12, 2020 in the Central Civil West Courthouse.  On August 27, 2020, at respondent's request, the Torrance court transferred and continued the hearing on

---

returned to work in February 2019, which translates to $1,329.60 for a 40-hour work week or a little over $5,300 per month.

appellant's June 2019 RFO to the same date in Central Civil West.[3]

### 3. *Hearings on request to modify child support*

The court convened hearings on the modification request on November 12, 2020 and February 25, 2021. Appellant represented himself at both and was sworn in to testify at the second hearing. At the initial hearing, counsel for CSSD explained it had filed its May 2020 modification motion at appellant's request after he informed CSSD he had "had a change of income and he was on disability and when it ran out, he went on unemployment."

Counsel for Moss described the history of appellant's claimed inability to work leading the Torrance court to impute income to appellant based on his prior job. She asserted appellant had submitted documentation again stating he was "unable to work because of . . . stress-related injury." Specifically, Moss's counsel just had received documents from appellant's doctors stating he was placed on disability from May through October 21 (presumably 2020) based on "emotional and anxiety issues"—"similar to" those he originally had claimed in February 2019—and he had suffered a shoulder injury on October 21.

Counsel asked for a continuance to obtain medical records and records from appellant's employer as to whether appellant had a disability, appellant's specific limitations, and whether

---

[3] The May 2020 motion is not part of the appellate record. The August 27, 2020 minute order is an exhibit to appellant's opening brief but is not part of the Clerk's Transcript. On our own motion, we augment the record to include it.

6

any reasonable accommodations existed or had been offered to appellant. Appellant told the court he had tried but was unable to go back to work and was on disability. He then injured his shoulder and could not return to work.[4] He would be starting physical therapy in two weeks.

The court continued the hearing date to February 25, 2021, to allow Moss to conduct discovery and to give appellant time to complete some physical therapy and see if he could return to work. The court asked counsel if there was anything the order should include "with respect to evidence regarding medical condition." CSSD's counsel asked that appellant provide evidence concerning his prognosis, diagnosis, ability to work, and reasonable accommodations.[5] The court ordered appellant —if he claimed disability at the next hearing—to bring evidence of his inability to work due to his medical condition, such as a letter from his doctor.

Another judicial officer (Commissioner Chen) presided over the continued hearing on February 25, 2021. The court noted appellant also had filed his own RFO that had been continued and then transferred to be heard with CSSD's motion. CSSD's counsel was unaware the RFO had been filed. Because

---

[4] Appellant said he was an airplane mechanic. His injury consisted of a "torn rotator cuff and a lacerated bicep tendon."

[5] The November 12, 2020 minute order does not include that level of detail. The court directed CSSD to prepare an order after hearing, however, which it did. We presume that formal, written order included those details; it is not part of the appellate record.

the June 3, 2019 RFO had no proof of service, the court stated it would be hearing only the motion filed May 7, 2020.

Counsel for CSSD again summarized the basis for the request for modification, specifying appellant had stopped working and gone on disability in March 2020. Counsel added that, following his October 2020 shoulder injury, appellant had shoulder surgery and expected to be off work until April 2021. Moss's counsel asked the court to deny modification on the ground appellant had failed to provide sufficient medical documentation, as the court had ordered, and had asked for modification based on previously rejected medical claims.

Appellant had filed, on February 18, 2021, a declaration with four attached exhibits.[6] Appellant confirmed he filed those exhibits in response to the court's order to provide documentation from a physician regarding his ability or inability to work. The court, who had examined the exhibits, asked appellant, "Is that all you have?" Appellant responded he also had "this return to work, ability to work. This was given to my employer before."[7]

The court explained, "I looked through all the four exhibits attached to your declaration, and there's really nothing that specifically concludes that you're not able to work." The court described the exhibits as "a little bit conflicting" because some

---

[6] They are not part of the appellate record.

[7] We presume appellant was referring to the August 1, 2019 certificate of disability that he filed with his September 2019 declaration.

8

of the documentation referred to appellant's "mental impairment" and others to his physical impairment.

The court also noted one exhibit conclusorily stated appellant should be placed off work from February 7, 2021 through April 7, 2021, but no basis was stated for "why that would be so." A second document from a different physician, dated January 29, 2021, stated appellant was "able to work but may experience some functional limitations." Appellant clarified the first letter was from his surgeon and was based on his professional opinion after repairing appellant's shoulder. Appellant said the second document was from his "treating doctor," rather than his surgeon. He explained, "[T]hat goes into when I filed—and the retroactivity was from June of 2019. This is my treating doctor that is discussing that piece of it."

Appellant also explained he had new evidence and facts that had not been available when he appeared before the Torrance court—and therefore the court could not consider them—when it imputed his earning capacity to calculate the $1,100-per-month guideline child support payment. He said he now had "this report right here"[8] from his doctor—dated before the February 2019 hearing but not provided to appellant—showing "over 51 percent of what's going on with me was related [to] my job." "From there on," appellant said the state had awarded him disability benefits from February 2019 through April 2019, and he had another worker's compensation claim "because of it."

Moss's counsel argued "nothing ha[d] changed." She repeated the details of appellant's previous claim that the

---

8      The report presumably was one of appellant's exhibits.

same stress disorder/disability prevented him from working, and his failure to present sufficient supporting evidence of that claim at the February 2019 hearing, leading the court to impute his earning capacity of $9,800 to calculate child support. Counsel asserted that, as in 2019, appellant still had not provided the requested documents—"[n]o prognosis, no diagnosis, no ability to work, no reasonable accommodation."

Counsel also directed the court's attention to another one of appellant's documents, "the 'final post-operative,' " that described steps appellant could take three, four, and six weeks after his shoulder surgery, which appears to have been on November 3, 2020.[9] Based on that report, appellant currently was "about 60 days" from the time he could discontinue using a night brace at six weeks post-surgery after having discontinued his sling and started "active assist range of motion" at four weeks post-surgery, and begun "range of motion" at three weeks post-surgery.

The court received into evidence appellant's February 18, 2021 declaration and the four attached exhibits. The court confirmed CSSD had brought its motion for modification on appellant's behalf and at his request. The court then ruled as follows,

> "The court does not find that the burden has been met to demonstrate a material change in circumstances to warrant a modification of

---

[9] The document stated appellant had a shoulder injury on November 3, 2020, but documents counsel received earlier stated appellant's injury occurred October 21, 2020. As the document is a post-operative report, we can infer the November 3 date is the date of surgery.

10

child support. The declaration with exhibits attached, the court has reviewed extensively but [it] does not satisfy the court's order from the last hearing . . . to provide sufficient evidence from a physician showing the ability or inability to work. Most of the information provided is inconclusive and certainly does not conclude a complete inability to work. [¶] So the burden has not been met to demonstrate a material change in circumstances to warrant a modification of child support at this time."

The court denied the motion, but "welcome[d]" any party to file an RFO or motion to seek modification of child support "if and when there is evidence to support it."

Finally, the court stated appellant's June 2019 RFO was "considered consolidated" with CSSD's May 7, 2020 motion based on the Torrance court's August 27, 2020 minute order. The court directed CSSD to prepare the Order after Hearing. The Order after Hearing, filed March 2, 2021, states, "Respondent's request for modification is denied. All existing orders remain in full force and effect."

Appellant filed a notice of appeal on April 22, 2021, purporting to appeal from the order entered February 25, 2021. The minute order entered on that date is not appealable. (Cal. Rules of Court, rule 8.104(c)(2) ["The entry date of an appealable order that is entered in the minutes is the date it is entered in the permanent minutes. But if the minute order directs that a written order be prepared, the entry date is the date the signed order is filed."].) Seeing no prejudice to Moss, we liberally construe appellant's notice of appeal to include the March 2, 2021

11

Order after Hearing denying the request for modification.[10] (See Cal. Rules of Court, rule 8.100(a)(2) [notice of appeal to be liberally construed in favor of its sufficiency]; *In re Marriage of Macfarlane & Lang* (1992) 8 Cal.App.4th 247, 252 [broadly construing notice of appeal to include order of dismissal where appellant clearly was seeking review of the dismissal, the notice of appeal was timely, and the opposing party was not prejudiced].)

## DISCUSSION

### 1. *Applicable law and standard of review*

"California has a strong public policy in favor of adequate child support." (*In re Marriage of Cheriton* (2001) 92 Cal.App.4th 269, 283.) California thus has established a mandatory, statewide uniform guideline to determine court-ordered child support. (See Fam. Code, §§ 4050–4076.)[11] In determining child support under the guideline, courts must adhere to certain principles, including that "[a] parent's first and principal obligation is to support the parent's minor children according to the parent's circumstances and station in life" (§ 4053, subd. (a)), and "[e]ach parent should pay for the support of the children according to his or her ability" (§ 4053, subd. (d)). (See also *In re Marriage of Cheriton*, at p. 283.) California's guideline support thus places the interests of the children as "the state's top priority." (§ 4053, subd. (e).)

---

[10] Appellant attached that order to his Civil Case Information Statement filed in this court, but it is not part of the Clerk's Transcript. We augment the record to include it on our own motion.

[11] Undesignated statutory references are to the Family Code.

12

Section 4055 sets out a complicated mathematical formula to determine child support. (§ 4055.) "Although this formula is referred to as the statewide uniform 'guideline' (§ 4055), 'guideline' is a misleading term" as the "formula support amount is 'presumptively correct' in all cases." (*In re Marriage of Cryer* (2011) 198 Cal.App.4th 1039, 1047–1048; § 4057, subd. (a).)[12] Under the guideline, child support is calculated based on "each parent's actual income and level of responsibility for the children." (§ 4053, subd. (c); § 4055, subd. (b)(1).) Section 4058, subdivision (b), however, grants trial courts discretion to set child support based on a parent's earning capacity rather than actual income if doing so is consistent with the best interests of the child. "So long as a parent has an earning capacity, that is, the ability and the opportunity to earn income, the trial court may attribute income." (*In re Marriage of Destein* (2001) 91 Cal.App.4th 1385, 1392; see also *In re Marriage of McHugh* (2014) 231 Cal.App.4th 1238, 1246 [earning capacity is comprised of " ' "the ability to work, including such factors as age, occupation, skills, education, health, background, work experience and qualifications . . . and . . . an opportunity to work" ' " (italics omitted)].) Thus, a court is limited in imputing income to a parent only to the extent the parent has no earning capacity or relying on earning capacity would be contrary to the child's best interests. (*In re Marriage of McHugh*, at p. 1246.)

---

[12] Because section 4055 "involves, literally, an algebraic formula," trial courts may use a computer program called DissoMaster to make the guideline child support calculation. (*In re Marriage of Schulze* (1997) 60 Cal.App.4th 519, 523–524, fn. 2.)

13

"A child support order may be modified when there has been a material change of circumstances.  [Citation.] The party seeking the modification bears the burden of showing that circumstances have changed such that modification is warranted.  [Citation.]"  (*In re Marriage of Cryer, supra*, 198 Cal.App.4th at p. 1054; see also § 3651, subd. (a).)  Thus, where the payor parent " 'seeks a reduction in court-ordered support based on the changed circumstances of lack of income, it will be the payor parent, as moving party, who bears the burden of showing a *lack* of ability and opportunity to earn income.' " (*In re Marriage of McHugh, supra*, 231 Cal.App.4th at pp. 1246– 1247.)  " 'The ultimate determination of whether the individual facts of the case warrant modification of support is within the discretion of the trial court.  [Citation.]  The reviewing court will resolve any conflicts in the evidence in favor of the trial court's determination.' "  (*In re Marriage of Cryer*, at p. 1054.)

Thus, we will affirm the trial court's order regarding a request to modify child support unless the court abused its discretion, and will reverse the order " 'only if prejudicial error is found from examining the record below.' "  (*In re Marriage of Williams* (2007) 150 Cal.App.4th 1221, 1233–1234.)  In our review for abuse of discretion, "we do not substitute our judgment for that of the trial court, and we will disturb the trial court's decision only if no judge could have reasonably made the challenged decision."  (*In re Marriage of Cryer, supra*, 198 Cal.App.4th at pp. 1046–1047.)  Nevertheless, " 'the trial court's discretion is not so broad that it "may ignore or contravene the purposes of the law regarding . . . child support." ' "  (*In re Marriage of Bodo* (2011) 198 Cal.App.4th 373, 384.)

" 'To the extent [the appellant] challenges the trial court's factual findings, our review follows established principles concerning the existence of substantial evidence in support of the findings. On review for substantial evidence, we examine the evidence in the light most favorable to the prevailing party and give that party the benefit of every reasonable inference. [Citation.] We accept all evidence favorable to the prevailing party as true and discard contrary evidence.' [Citation.] 'We do not reweigh the evidence or reconsider credibility determinations. [Citation.]' [Citation.]" (*In re Marriage of Calcaterra & Badakhsh, supra*, 132 Cal.App.4th at p. 34.) And, in a case where the trial court concluded the party bearing the burden of proof did not meet that burden—as is the situation here— the question is not so much whether substantial evidence supports the court's findings, but " 'whether the evidence compels a finding in favor of the appellant as a matter of law.' " (*Juen v. Alain Pinel Realtors, Inc.* (2019) 32 Cal.App.5th 972, 978–979 [specifically, whether appellant's evidence was uncontradicted, unimpeached, and " ' "of such a character and weight as to leave no room for a judicial determination that it was insufficient to support a finding" '"].)

2. ***Appellant has failed to show the trial court abused its discretion***

Appellant asks us to reverse the court's order denying his request for modification[13] and to enter a new order calculating

_____

[13] Although CSSD technically filed the May 2020 motion, in effect it was appellant's request for modification. The trial court treated it as such, as do we.

15

guideline child support based on his actual income (or lack thereof) received from June 3, 2019 through July 23, 2021. Appellant initially contends the trial court—in entering the March 2019 child support order—used "an erroneous dissomaster with [his] income based on $9,803.00 monthly, instead of $5,300.00 monthly from EDD State Disability, EDD Unemployment, and Unemployment which caused Child Support, Arrears, and Interest to be calculated erroneously in the amount of approximately $27,000." However, appellant's appeal is not from the March 2019 child support order, but from the order denying his request to modify that order. As appellant never appealed from the March 2019 child support order, it cannot be challenged now, and the issues determined by it are res judicata. (*In re Marriage of Gruen* (2011) 191 Cal.App.4th 627, 637–638; § 3554 [appeal may be taken from an order under the statutory division governing child support].)

When the court made the March 2019 order, it imputed income to appellant based on his earning capacity of $9,803 per month—appellant's income at IAMAW before he took medical leave in 2018 for a claimed stress disorder and filed an unsuccessful worker's compensation claim. As discussed, in doing so, the Torrance court apparently rejected as insufficient the evidence appellant submitted to show he was unable to work due to that stress disorder/disability. As appellant never challenged the March 2019 order, we must presume that, in calculating guideline child support based on appellant's earning capacity, rather than his actual income, the court found—based on substantial evidence—appellant had the ability and opportunity to work and earn that level of income, despite his asserted stress disorder/disability. (See *In re Marriage*

16

*of McHugh, supra*, 231 Cal.App.4th at p. 1246–1247 [calculation of child support based on earning capacity is appropriate unless parent has no earning capacity, meaning no ability or opportunity to work, or not in the child's best interests].)

In seeking modification of that order, therefore, appellant had the burden to present evidence showing his circumstances had changed since then—namely, that he no longer had the ability and opportunity to earn $9,803 per month.[14] Essentially, appellant asserted his inability to work due to his ongoing stress disorder/disability and his October 2020 shoulder injury and subsequent surgery demonstrated changed circumstances requiring the court to modify his child support obligation based on his actual income rather than his earning capacity.

In an apparent response to the court's order at the November 2020 hearing to produce evidence from his healthcare provider showing his ability or inability to work, appellant filed, on February 18, 2021, a declaration and four exhibits. The court "extensively" reviewed the declaration and exhibits, and received them into evidence. In response to the court's query as to whether appellant had any other evidence that complied

---

[14] Appellant appears to have argued below that he did not have the ability to work, rather than no opportunity to work. He does not address that issue on appeal; we thus do not consider it. (See *Badie v. Bank of America* (1998) 67 Cal.App.4th 779, 784–785 ["When an appellant fails to raise a point, or asserts it but fails to support it with reasoned argument and citations to authority, we treat the point as [forfeited]."]; *Munro v. Regents of University of California* (1989) 215 Cal.App.3d 977, 988 [party "may not raise on appeal issues not raised in trial court"].)

with its order, appellant referred the court to "this return to work, ability to work. This was given to my employer before." We presume appellant was referring to the August 1, 2019 certificate of disability attached to his September 2019 declaration.

The court found appellant's February 2021 declaration and exhibits did not satisfy the court's earlier order "to provide sufficient evidence from a physician showing the ability or inability to work." We can infer the court similarly rejected the August 2019 certificate of disability—that we infer appellant presented at the hearing—as it does not state appellant's diagnosis or the basis for the temporary disability. The court noted most of the information appellant provided was "inconclusive and certainly does not conclude a complete inability to work." It thus found appellant failed to meet his burden to establish a material change in circumstances to warrant modifying the child support order at that time.

Appellant's February 2021 declaration and exhibits are not part of the appellate record. While we are mindful appellant is representing himself on appeal, he "is to be treated like any other party and is entitled to the same, but no greater consideration than other litigants and attorneys." (*Barton v. New United Motor Manufacturing, Inc.* (1996) 43 Cal.App.4th 1200, 1210.) He thus is required to follow the most fundamental rule of appellate review: the judgment or order challenged on appeal is presumed to be correct, and "it is the appellant's burden to affirmatively demonstrate error." (*People v. Sanghera* (2006) 139 Cal.App.4th 1567, 1573.) "All intendments and presumptions are indulged to support it on matters as to which the record is silent, and error must be affirmatively shown." (*Denham v. Superior Court* (1970)

18

2 Cal.3d 557, 564.) To overcome this presumption, an appellant must provide a record that allows for meaningful review of the challenged order. (*Foust v. San Jose Construction Co., Inc.* (2011) 198 Cal.App.4th 181, 187.) " 'Failure to provide an adequate record on an issue requires that the issue be resolved against [the] [appellant].' " (*Ibid.*) If the record does not include all the evidence and materials the trial court relied on in making its determination, we will not find error. (*Haywood v. Superior Court* (2000) 77 Cal.App.4th 949, 955.) Rather, we will infer substantial evidence supports the court's findings. (*Ibid.*)

The reporter's transcript describes some of the evidence appellant proffered, as we discussed, summarized here:

- The August 1, 2019 certificate of disability stating appellant was temporarily totally disabled from August 1, 2019 to September 15, 2019.
- A doctor's report (apparently prepared before the March 2019 order but unavailable to appellant) stating "over 51 percent of what's going on with me [presumably, his stress disability] was related [to] my job."
- A letter from appellant's "treating doctor" dated January 29, 2021, stating appellant was able to work but might experience some functional limitations.
- A letter from appellant's shoulder surgeon stating appellant should be placed off work from February 7, 2021 through April 7, 2021.
- A " 'final post-operative' " report from appellant's surgeon stating appellant had a shoulder injury on November 3, 2020, presumably the surgery date, and noting appellant could start range of motion activity three weeks post-surgery, could discontinue his sling and progress to

19

"active assist range of motion" four weeks post-surgery, and could discontinue his brace at night six weeks post-surgery (which counsel stated would have been December 15, 2020). Appellant also testified the state awarded him disability benefits from February 2019 through April 2019 based on his doctor's report; he had a second worker's compensation claim—as far as we can discern—due to his need to stop work at the end of April or beginning of May 2019, based on the same stress disorder; and he currently was in physical therapy for his shoulder and "getting better" so he could "get back to work."[15]

Appellant argued the documentation he submitted showed he continued to be unable to work due to his stress disorder/ psychological disability after the entry of the child support order, and he could not return to work as an airplane mechanic—his most recent position—due to his shoulder injury and surgery. Although the evidence may show appellant was not working, we cannot conclude it compels a finding that he lacked the ability to work and thus no longer had the earning capacity attributed to him in the March 2019 child support order.

As the trial court noted, the evidence was contradictory. While appellant's treating doctor apparently concluded appellant was able to work in January 2021, his surgeon placed him off work from February 2021 through April 2021. Nor does the documentation, as the court also noted, provide a basis for appellant's inability to work. And, as Moss's counsel added,

---

[15] The record does not include documentation, other than appellant's declaration, concerning his disability award or worker's compensation claims.

according to the surgeon's instructions, plaintiff would have been sling free, even at night, for the two months preceding the February 2021 hearing.

Although appellant explained these inconsistencies, we can infer the trial court did not credit appellant's explanations, and resolve the apparent conflict in the evidence in support of the court's determination. (*In re Marriage of Cryer, supra*, 198 Cal.App.4th at p. 1054 ; *In re Marriage of Calcaterra & Badakhsh, supra*, 132 Cal.App.4th at p. 34.) Certainly, on the record before us, appellant's evidence was neither uncontradicted nor of such character and weight as to compel a finding in his favor that his stress disorder or injury prevented him from working at all. (See *Juen v. Alain Pinel Realtors, Inc., supra*, 32 Cal.App.5th at p. 979.)

Moreover, the fact appellant's doctor may have placed him off work due to his stress disorder or injury does not compel a finding that appellant had no ability to work, and thus had no earning capacity. True, appellant's economic situation had changed, but he bore the burden to show he lacked the ability or opportunity to continue to earn income at the same level— for example, with a reasonable accommodation or in a temporary position. The court reasonably determined he did not. As Moss's counsel noted, appellant did not provide documentation, as the court had ordered at the November 2020 hearing, from his healthcare provider as to his diagnosis, prognosis, or ability to work,[16] or information from his employer about whether a

---

[16] Moss's counsel noted appellant failed to provide specifics as to his ability to work for the February 2019 child support hearing as well. As we discussed, the documentation in the record does

reasonable accommodation existed or had been offered. Nor is there any indication that appellant asked for a reasonable accommodation or to work in a different position that would not have aggravated his disability or injury. And, he apparently had declined an accommodation before the court entered the original child support order. Given the actual documentation the court considered is not part of the appellate record, we must infer it supported the court's implicit finding that it was insufficient to show appellant's earning capacity had changed due to his continuing stress disorder/disability or shoulder injury. (See *In re Marriage of McHugh, supra*, 231 Cal.App.4th at pp. 1246–1247 [payor parent must show " '*lack* of ability and opportunity to earn income' " to demonstrate changed circumstances to warrant modification of child support order based on earning capacity].)

As we discussed, whether the individual facts presented warrant modification of child support remains within the broad discretion of the trial court. (*In re Marriage of Cryer, supra*, 198 Cal.App.4th at p. 1054.) On this record, we cannot say no judge reasonably could have found appellant failed to meet his burden to prove changed circumstances required modifying the initial child support calculation to appellant's then-current income rather than his earning capacity. (*Id.* at pp. 1046–1047.) Accordingly, appellant has not demonstrated the trial court erred in denying his request to modify the child support and income withholding orders.

---

not provide a basis for, or the specific effects of, appellant's disability. We presume the exhibits omitted from the record also did not, as the court found.

In reaching our conclusion, we do not suggest appellant did not have a stress disorder or a shoulder injury. Rather, appellant failed to demonstrate with sufficient evidence the impact his disability and injury had on his earning capacity and ability to pay child support. We note the trial court invited any party to move to change the child support order when there was evidence to support its modification.

3. ***The court did not err when it did not separately hear appellant's June 2019 RFO***

Appellant appears to contend the trial court should have considered his June 2019 RFO because CSSD knew of the June 3, 2019 RFO through minute orders it had received,[17] and appellant's RFO sought to modify the child support order retroactive to June 3, 2019. As we discussed, the court did not hear the June 2019 RFO because there was no proof of service showing it had been served and considered it consolidated with the May 2020 motion. Although CSSD may have been aware that appellant filed his own RFO, nothing in the record demonstrates CSSD ever was served with the RFO nor does appellant contend he served CSSD.

Even if the court also should have heard the June 2019 RFO, however, appellant has failed to show prejudice from the purported error. An appellant has the burden not only to show error but prejudice from that error as well. (See Cal.

---

[17] The clerk served CSSD with notice of the August 27, 2020 minute order that continued and transferred appellant's RFO to be heard with CSSD's motion, and the November 12, 2020 and February 25, 2021 minute orders identify the nature of the proceedings as appellant's June 3, 2019 RFO.

Const., art. VI, § 13 [miscarriage of justice required for reversal].) If an appellant fails to satisfy that burden, his argument will be rejected on appeal. (*Century Surety Co. v. Polisso* (2006) 139 Cal.App.4th 922, 963; see also see also *In re Marriage of Falcone & Fyke* (2008) 164 Cal.App.4th 814, 823 [miscarriage of justice will not be found " 'unless it appears reasonably probable that, absent the error, the appellant would have obtained a more favorable result' "].)

As the May 2020 motion for modification was for appellant's benefit and filed at his request, we can infer it included the information appellant provided in support of his own RFO. We similarly can infer appellant's February 2021 declaration reiterated the statements he made in his 2019 supporting and reply declarations about his ongoing stress disorder/psychological disability, his worker's compensation claims, disability award, and unemployment. We thus can presume the court considered that information despite hearing only the May 2020 motion. And, as discussed, we can infer the court considered the certificate of disability attached to appellant's September 2019 declaration and found it insufficient because it did not state the basis for appellant's temporary total disability.

At the hearing, no one mentioned appellant's reduced pay rate for three months when he temporarily returned to work for IAMAW on February 1, 2019, or his subsequent termination on May 9, 2019. That evidence was included in appellant's 2019 declarations, although the termination letter from his employer is not part of the appellate record.

Even if that evidence were not included with CSSD's motion, however, the court's consideration of it would not have

24

reasonably led the court to rule differently. Again, that appellant's income was reduced—or even eliminated—does not necessarily demonstrate an inability to earn income. Appellant does not explain why his hourly rate was reduced, for example, or the circumstances surrounding his termination. (See, e.g., *In re Marriage of McHugh, supra,* 231 Cal.App.4th 1241–1242 [discretion to set child support based on earning capacity includes imputing income based on earnings at a prior job, "without evidence the parent has the current opportunity to earn at that same level, if the parent left or otherwise lost the job in a manner reflecting a voluntary and deliberate divestiture of financial resources required to pay child support obligations"].)

In short, as the evidence appellant submitted with his June 3, 2019 RFO does not compel a finding that he lacked the ability to work and to earn income at the level imputed to him in the March 2019 child support order, appellant was not prejudiced by any purported error on the trial court's part in not hearing the June 3, 2019 RFO. And, as we have concluded the court did not err in denying the request for modification, appellant's desire to have any child support modification made retroactive to June 3, 2019, is moot. (§ 3653, subd. (a) [order modifying child support "may be made retroactive" to the date of filing notice of motion].)

Finally, appellant appears to argue, without citation to the record, that he was denied the ability to enter exhibits into evidence. The record does not support appellant's contention. The trial court received appellant's February 18, 2021 declaration and attached exhibits into evidence. Nothing in the record demonstrates appellant asked the trial court to receive any other

25

exhibits into evidence or that the court declined to do so. (See, e.g., *Yield Dynamics, Inc. v. TEA Systems Corp.* (2007) 154 Cal.App.4th 547, 557 [ordinarily, errors not reflected in the trial record cannot sustain reversal on appeal].)

## DISPOSITION

The March 2, 2021 order is affirmed. Because respondents elected not to file briefs in this court, there are no costs on appeal to award.


**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**



EGERTON, J.

We concur:



LAVIN, Acting P. J.



KIM, J.*

---

\* Judge of the Los Angeles County Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.